No. 79-35

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

DOVER RANCH, ROBERT J. SCHOCK,
EDWARD WALDHAUSER, PAUL M. WOLD,
and BAR DIAMOND RANCH,

Plaintiffs and Respondents,

vs.

THE COUNTY OF YELLOWSTONE,

Defendant,

and

GENERAL-KIMBLE,

Intervenor-Defendant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and For the County of Yellowstone,
              Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Harold F. Hanser, County Attorney, Billings, Montana
        David Hoefer argued, Deputy County Attorney, Billings,
         Montana
        Moulton, Bellingham, Longo and Mather, Billings, Montana
        Gerald B. Murphy argued, Billings, Montana

    For Respondents:

        McNamer, Thompson & Cashmore, Billings, Montana
        Charles R. Cashmore argued, Billings, Montana

---

Submitted:  March 27, 1980

Decided:  APR 1 8 1980

Filed: APR 1 8 1980

Thomas J. Kearney
                                            Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by Yellowstone County and General-Kimble, a partnership, from a judgment of the District Court setting aside as null and void an amended resolution of the Board of Yellowstone County Commissioners which granted the application of General-Kimble for a zoning change on a certain parcel of land from agricultural and restricted residential to residential mobile home.

On November 18, 1976, General-Kimble filed Application No. 120 for a change of zoning classification from agricultural and restricted residential to residential mobile home on a certain parcel of land in Billings Heights. General-Kimble desired to build a mobile home park on the tract, which was unused, undeveloped agricultural property classified as agricultural under the Yellowstone County Comprehensive Zoning Plan and surrounded by primarily vacant land with widely scattered residences.

The application was considered by the staff of the city-county planning board, which made the following recommendation to the zoning commission:

> ". . . found that this request would provide, when developed, mobile home spaces that are needed in the community as shown by low vacancies in existing parks. Alexander Road meets the requirement that a mobile home park of this size should have access to an arterially designated street. Lake Elmo will attract residential use, therefore it was found that a mobile home park or subdivision, after full review by the Food and Consumer Safety Bureau, the Yellowstone City-County Health Department and other reviewing agencies, would be compatible in the area."

After notice of a public hearing was published and sent to affected landowners, a joint zoning commission and county commission meeting was held on January 19, 1977, to consider the zoning change application. At the hearing, a member of

-2-

the city-county planning board staff read the legal advertising and presented slides of the area, and a member of the zoning commission read the criteria set forth in section 76-2-203, MCA. General-Kimble and its consulting engineer gave evidence in favor of the zoning change, while two nearby ranchers and another area resident, as well as the chairman of a local school district, spoke out against the change. A written protest was also received. Two of the opponents are plaintiffs-respondents in the present suit.

The zoning commission voted 3-1 to grant the zoning change and provided its recommendation to the county commissioners, giving the following reasons for granting the petition:

"1. Upon initial review, this request would appear not to be designed in accordance with the Comprehensive Plan. However, more thorough research reveals the following points that indicate it is in accordance with the Comprehensive Plan:

"a. Item 5 (page 62) under "Mobile Homes" in the Comprehensive Plan calls for the following:

"'The plan envisioned the continuation of existing mobile home parks, with the expansion of those with suitable area. The major projections for new facilities were in the Lockwood area, where land parcels were of sufficient size, access was good and where public facilities were imminent . . .' It seems that these considerations would fit the condition presented by this request, though it is located in the Billings Heights area.

'"b. This request would not be 'leap-frog' development. It is a natural extension of existing and proposed development surrounding the Lake Elmo area.

"2. The required access to an arterial street is met by the adjacent Alexander Road.

"3. Low vacancy rates in existing mobile home parks indicate a need for more developed sites in the community."

On February 1, 1977, the Yellowstone County commissioners unanimously passed a resolution granting General-Kimble's

zoning change application. The resolution recited that it was being adopted pursuant to the comprehensive plan following a public hearing on January 19, 1977 (the joint zoning commission-county commission hearing) and after receiving and considering the recommendations of the zoning commission. On February 17, 1977, the county commissioners passed an amended resolution which recited verbatim the reasons given by the zoning commission for granting the zoning change.

The plaintiffs-respondents did not request a rehearing under Article VII, Section 5(b) of the County Comprehensive Zoning Plan. They appealed to the District Court of the Thirteenth Judicial District, Yellowstone County, by filing a petition with that court on March 3, 1977. Motions for summary judgment by both parties were denied by the District Court on April 21, 1978, and the matter was submitted on a stipulated record, after argument by counsel, on June 7, 1979. On June 15, 1979, the court entered its findings and conclusions that: (1) the procedures followed by the county in granting General-Kimble's application for a zoning change did not conform with the requirements of section 76-2-205, MCA, and the requirements of Article VII of the County Comprehensive Zoning Plan; (2) the evidence did not support granting the zoning change under section 76-2-203, MCA; and, (3) the zoning change constituted illegal "spot zoning" and was contrary to the comprehensive zoning plan.

General-Kimble and Yellowstone County appeal from the judgment of the District Court entered against them on June 25, 1979, and raise the following issues for review by this Court:

-4-

1. Whether the procedures followed in granting the zoning change adequately conformed to the requirements set forth in section 76-2-205, MCA, and Article VII of the County Comprehensive Zoning Plan.

2. Whether there is sufficient evidence in the record to support granting the zoning change under section 76-2-203, MCA, or whether it was an abuse of discretion.

3. Whether the granting of the zoning change constituted illegal "spot zoning" contrary to the comprehensive zoning plan.

Appellants argue that the county complied with the procedural requirements of section 76-2-205, MCA, and Article VII of the County Comprehensive Zoning Plan. Subsection (4) of section 76-2-205, MCA, which provides that "[t]he board of county commissioners may pass a resolution of intention to create a zoning district and to adopt zoning regulations for the district" is discretionary, and the county did not need to pass a resolution of intention if the word "may" is given its ordinary meaning. County of Chouteau v. City of Fort Benton (1979), ____ Mont. ____, 592 P.2d 504, 36 St.Rep. 582. Appellants contend there was no showing that the county abused its discretion, and, in any case, there was substantial compliance with the procedural requirements mandated by the statute, since respondents' rights to a full and fair hearing have not been prejudiced by any irregularity in procedure that may have occurred.

Appellants argue further that notices of the public hearing were mailed to respondents well before the hearing, and since respondents were present at the hearing and their protests heard, they should be held to have waived any technical failure of the county to comply with statutory

notice requirements. They further claim that Article VII of the County Comprehensive Zoning Plan imposes no additional requirements and does not compel separate hearings by the zoning commission and county commissioners.

Finally, appellants argue that subsection (4) of section 76-2-205, MCA, applies only to an application to create a zoning district and does not apply to an amendment of zoning regulations such as occurred in the present case.

At the outset it is necessary to examine and interpret the controlling statute, section 76-2-205, MCA:

> "Procedure for adoption of regulations and boundaries. The board of county commissioners shall observe the following procedures in the establishment or revision of boundaries for zoning districts and in the adoption or amendment of zoning regulations:
>
> "(1) Notice of a public hearing on the proposed zoning district boundaries and of regulations for the zoning district shall be published once a week for 2 weeks in a newspaper of general circulation within the county. The notice shall state:
>
> "(a) the boundaries of the proposed district;
>
> "(b) the general character of the proposed zoning regulations;
>
> "(c) the time and place of the public hearing;
>
> "(d) that the proposed zoning regulations are on file for public inspection at the office of the county clerk and recorder.
>
> "(2) At the public hearing, the board of county commissioners shall give the public an opportunity to be heard regarding the proposed zoning district and regulations.
>
> "(3) After the public hearing, the board of county commissioners shall review the proposals of the planning board and shall make such revisions or amendments as it may deem proper.
>
> "(4) The board of county commissioners may pass a resolution of intention to create a zoning district and to adopt zoning regulations for the district.

"(5) The board of county commissioners shall publish notice of passage of the resolution of intention once a week for 2 weeks in a newspaper of general circulation within the county. The notice shall state:

"(a) the boundaries of the proposed district;

"(b) the general character of the proposed zoning regulations;

"(c) that the proposed zoning regulations are on file for public inspection at the office of the county clerk and recorder;

"(d) that for 30 days after first publication of this notice, the board of county commissioners will receive written protests to the creation of the zoning district or to the zoning regulations from persons owning real property within the district whose names appear on the last completed assessment roll of the county.

"(6) Within 30 days after the expiration of the protest period, the board of county commissioners may in its discretion adopt the resolution creating the zoning district and/or establishing the zoning regulations for the district; but if 40% of the freeholders within such district whose names appear on the last completed assessment roll shall have protested the establishment of the district or adoption of the regulations, the board of county commissioners shall not adopt the resolution and no further zoning resolution shall be proposed for the district for a period of 1 year." (Emphasis added.)

Section 76-2-205, MCA, sets out a six-step procedure which is to be followed by the board of county commissioners in establishing or revising zoning districts and in adopting or revising zoning regulations. It is undisputed that Step No. 4 (and thus, Step Nos. 5 and 6) was not followed by the Board of Yellowstone County Commissioners in the present case. Subsection (4) of 76-2-205, MCA, provides that "the board of county commissioners may pass a resolution of intention to create a zoning district and to adopt zoning regulations for the district." Although the Yellowstone County commissioners followed the procedures set forth in the first three subsections of section 76-2-205 by pub-

-7-

lishing notice of a public hearing, conducting a hearing at which the public was given an opportunity to be heard, and reviewing the proposals of the planning board, they did not pass a resolution of intention pursuant to subsection (4) nor follow the procedures subsequent thereto.

Appellants contend that subsection (4), which provides that the commissioners may pass a resolution of intention, is discretionary. They argue the county did not need to pass a resolution of intention if the word "may" is given its ordinary meaning, citing County of Chouteau v. City of Fort Benton (1979), ____ Mont. ____, 592 P.2d 504, 507, 36 St.Rep. 582, for the rule of construction that, "the word 'may', unless it has acquired a special meaning in law, is to be given its ordinary meaning." 592 P.2d at 507. They contend that the county did not abuse its discretion.

We disagree. When section 76-2-205, MCA, is read as a whole, it is obvious that the legislature did not intend to grant the county commissioners discretion to ignore the statutory procedures. It is clear from the context of the entire statute that at Step No. 4 of the proceedings, the commissioners "may deny" the application or they "may pass" a resolution of intention if they intend to grant the application. They cannot grant the application at that time. They must proceed as outlined in subsections (5) and (6). To hold otherwise would lead to the illogical result of allowing the county commissioners to determine whether or not they will publish notice of the passage of a resolution of intention and receive written protests during that thirty-day comment period envisioned in subsection (5), which provides that they "shall" publish such notice. It is a well-established rule of statutory construction that a

-8-

statute be read as a whole and construed so as to avoid absurd results. Montana Power Co. v. Cremer (1979), ___ Mont. ___, 596 P.2d 483, 36 St.Rep. 1158; State ex rel. Jones v. Giles (1975), 168 Mont. 130, 541 P.2d 355; Billings Properties, Inc. v. Yellowstone County (1964), 144 Mont. 25, 394 P.2d 182.

The only absolute discretion vested by the statute in the county commissioners is to review the petition after hearing and to decide whether they should pass a resolution of intention to start the proceedings necessary to establish the zoning district or establish regulations for a district. There is no rational analysis to demonstrate the legislature intended otherwise in view of the statute's purpose of providing procedures for establishing zoning districts and zoning regulations which guarantee to the freeholders notice of the proposed action and an opportunity to protest.

The goal of statutory interpretation is to give effect to the purpose of the statute. Burritt v. City of Butte (1973), 161 Mont. 530, 508 P.2d 563. A statute will not be interpreted to defeat its object or purpose, and the objects sought to be achieved by the legislature are of prime consideration in interpreting it. Doull v. Wohlschlager (1963), 141 Mont. 354, 377 P.2d 758.

Appellants have cited County of Chouteau v. City of Fort Benton, supra, for the proposition that unless it has acquired a special meaning in law, the word "may" is to be given its ordinary meaning. "May" is used here in its ordinary meaning. The statute simply states that after the public hearing and determinations by the commissioners, they "may" pass a resolution of intention to create a zoning

district and to adopt zoning regulations for the district. "May," of course, does not have a mandatory connotation in its usual meaning, so the commission could do the opposite and not create a district if their study indicated this course of action.

> "Where the state zoning enabling act prescribes certain procedural steps, that procedure is usually regarded as mandatory, and hence a substantial failure to comply with such requirements will render a zoning ordinance invalid." 82 Am.Jur.2d Zoning and Planning, §47.

See also 1 Anderson, American Law of Zoning, §4.03 (2nd Ed. 1968).

Since the Yellowstone County commissioners failed to comply with the procedures in section 76-2-205(4), (5) and (6), MCA, the District Court properly invalidated the commission's granting of General-Kimble's application for a zoning change.

Appellants' argument that subsection (4) of section 76-2-205, MCA, applies only to an application to create a zoning district and does not apply to an amendment of zoning regulations, such as occurred in the present case, is without merit. The introductory language of section 76-2-205, MCA, makes it clear that: "The board of county commissioners shall observe the following procedures in the establishment or revision of boundaries for zoning districts and in the adoption or amendment of zoning regulations . . ."

In light of the disposition of the first issue, it is unnecessary to consider appellants' remaining specifications of error as they now are moot. We repeat for further clarification that section 76-2-205, MCA, in its entirety (subsections 1 through 6) is the only statute available for use by the various county commissioners of this state for the

creation of zoning districts and/or establishing zoning regulations for the districts.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

_____
Honorable Gordon R. Bennett,
District Judge, sitting in
place of Mr. Chief Justice
Frank I. Haswell