No. 87-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

JACK E. GALT, LOUISE R. GALT, PHIL
ROSTAD, ROBERT E. SAUNDERS, CLARENCE
EDWARD (TED) LUCAS, JAMES BOTTOMLY,
J. HARRISON SAUNDERS, JAKE FRANK,
FRANKLIN GROSFIELD, and LOWELL E.
HILDRETH,

        Plaintiffs and Respondents,

    -vs-

STATE OF MONTANA, acting by and through
THE DEPARTMENT OF FISH, WILDLIFE and PARKS,

    Defendant and ~~Respondent~~ *Appellant.*

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Poore, Roth & Robinson; Urban L. Roth argued, Butte,
Montana
Bob Lane, Dept. of Fish, Wildlife & Parks, Helena,
Montana

    For Respondent:

        Harrison, Loendorf & Poston; Philip W. Strope argued,
Helena, Montana

    For Amicus Curiae:

        Hon. Mike Greely, <u>Attorney General, Helena, Montana</u>
Joe Roberts, Asst. Atty. General, Helena

                        Submitted: November 12, 1987

                         Decided: February 11, 1988

Filed: FEB 1 1 1988

                                *Ethel M. Harrison*

                                   Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellant/defendant State of Montana (the State) appeals a District Court award of $21,080 in attorneys' fees made to respondent/plaintiffs Galt et al. (Galt). Galt brought this action pursuant to the Uniform Declaratory Judgment Act, § 27-8-101 through § 27-8-313, MCA, and sought an order declaring House Bill 265, the "Stream Access Bill," § 23-2-301 et seq., MCA (1985), unconstitutional as a taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, § 29 of the Montana Constitution. The District Court granted summary judgment to the State and Galt appealed.

This Court, in Galt v. State Department of Fish, Wildlife, and Parks (Mont. 1987), 731 P.2d 912, 44 St.Rep. 103, partially reversed the District Court and found § 23-2-302(2)(d), (e), (f), and portions of § 23-2-311(3)(e), MCA (1985), unconstitutional. This Court entered declaratory judgment in Galt's favor.

On February 17, 1987, Galt filed a "Memorandum of Costs, Disbursements and Attorneys' Fees" in the District Court. The State objected to Galt's bill of costs and attorneys' fees and moved that the same be taxed by the District Court. The District Court heard the motion orally and ordered that the State pay plaintiffs' attorneys' fees and costs pursuant to Mont. Const. Art. II, § 29 which provides the following:

> Eminent domain. Private property shall not be taken for public use without just compensation to the full extent of the loss having first been made to or paid into the court for the owner. In the event of litigation, just compensation

2

> shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails. (Emphasis added.)

We affirm with instructions.

The District Court reasoned that the unconstitutional provisions "[i]mposed easements for public use upon Plaintiffs' private property without any compensation" and found that plaintiffs were entitled to attorneys' fees and costs because they prevailed in this action when the Supreme Court ruled in their favor. The State of Montana appeals the District Court award of attorneys' fees and raises the following issues:

(1) Whether Article II, § 29 of the 1972 Montana Constitution applies to declaratory judgment actions brought solely to challenge the constitutionality of a legislative enactment?

(2) Did the District Court err in concluding that private property was taken or damaged for public use?

The District Court's award of attorneys' fees will not be reversed absent a clear showing of an abuse of discretion. Simkins-Hallin Lumber Co. v. Simonson (Mont. 1984), 692 P.2d 424, 427, 41 St.Rep. 2305, 2309. As a preliminary matter, both parties recognize that attorneys' fees are not recoverable absent an express agreement between the parties or statutory authority. Thorton v. Commissioner of Dept. of Labor and Industry (Mont. 1980), 621 P.2d 1062, 1066, 37 St.Rep. 2026, 2030. It is undisputed that no express agreement allowing attorneys' fees exists between the parties. Galt contends that Mont. Const. Art. II, § 29 specifically authorizes an award of attorneys' fees in this case.

3

The State of Montana does not question the amount of attorneys' fees awarded to Galt. The State does, however, argue in its first issue that Mont. Const. Art. II, § 29 applies strictly to condemnation proceedings or actions for inverse condemnation. A private property owner, the State contends, is entitled to "just compensation" only when private property is actually "taken or damaged" for public use. The District Court found that the State's "argument places form over substance" and awarded attorneys' fees and costs to Galt under Mont. Const. Art. II, § 29. We agree with the District Court's analysis and conclusions concerning the applicability of Mont. Const. Art. II, § 29 to the particular circumstances of this case.

The State claims that the plain meaning of the statute requires either a condemnation proceeding or an action for inverse condemnation and that a declaratory judgment action cannot qualify Galt for an award of attorneys' fees. Although we must, when possible, determine the intent of the legislature from the plain meaning of the words used in the statute, our reading of the statute does not coincide with the State's interpretation. State v. Cardwell (1980), 187 Mont. 370, 373, 609 P.2d 1230, 1232. The statute does not define what legal procedures must be followed to qualify a particular legal action as an eminent domain proceeding.

We recognize that the legislature has provided statutory procedures for the State's exercise of its eminent domain rights. Section 70-30-101, et seq., MCA. These statutes specifically authorize an award of the necessary expenses of litigation to the private property owner who "prevails by receiving an award in excess of the [State's] final offer . . . " Section 70-30-305(2), MCA. Statutory condemnation proceedings, however, are not the exclusive method by which the State may be taken to task by a private

4

property owner for exercising its right of eminent domain. The State has, in some circumstances, taken private property without an actual physical appropriation of land. Knight v. City of Billings (1982), 197 Mont. 165, 642 P.2d 141; Rauser v. Toston Irr. Dist. (1977), 172 Mont. 530, 565 P.2d 632. The private property owner often responds in such circumstances by filing an action for inverse condemnation. Rauser, 565 P.2d 632.

This Court held in Rauser, supra, that the private property owner who prevails in an action for inverse condemnation may recover attorneys' fees pursuant to Mont. Const. Art. II, § 29. Rauser, 565 P.2d at 641. In so holding, this Court reasoned that the State's failure to follow the statutory condemnation proceedings "may not be used to deny [the private property owners] their attorney fees." Rauser, 565 P.2d at 641. (Additions ours.) Similarly, Galt's election to settle this matter in a declaratory judgment action cannot be used by the State to deny an award of attorneys' fees in this case.

The Fifth Amendment of the United States Constitution has also been construed by the United States Supreme Court to allow compensation to the private property owner in legal proceedings other than traditional condemnation actions. Jacobs v. United States (1933), 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142. In recognizing inverse condemnation actions, Jacobs noted the following with respect to the compensation requirements of the Fifth Amendment:

> [The right to recover just compensation for property taken by the United States] was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify

5

> the right. It rested upon the Fifth
> Amendment. Statutory recognition was not
> necessary. A promise to pay was not
> necessary. Such a promise was implied
> because of the duty imposed by the
> Amendment. The suits were founded upon
> the Constitution of the United States.
> (Additions ours.)

Jacobs, 290 U.S. at 16, 54 S.Ct. at 27. We find the reasoning in Jacobs to be equally applicable to the instant case. The right to recover just compensation is guaranteed in Montana by both the Fifth Amendment of the United States Constitution and Article II, § 29 of the Montana Constitution. The form of the action, in this case a declaratory judgment, does not qualify the right to compensation. The right to just compensation rests upon the constitutional mandates. Just compensation in Montana includes attorneys' fees. Mont. Const. Art. II, § 29.

The State also claims that the legislative intent of the eminent domain statute does not include situations as presented by this appeal. In our review of the legislative history of Article II, § 29, we will construe the statute to give effect to the legislature's intent. Section 1-2-102, MCA; Caldwell v. Great Western Sugar Co. (Mont. 1987), 746 P.2d 627, 628, 44 St.Rep. 2123, 2124. The object of the statute must be given foremost consideration and our interpretation of the statute must give effect to that object. Section 1-2-103, MCA; Dover Ranch v. Yellowstone County (1980), 187 Mont. 276, 284, 609 P.2d 711, 715.

This Court reviewed the legislative history of Article II, § 29, in Callant v. Federal Land Bank of Spokane (1979), 181 Mont. 400, 593 P.2d 1036, and noted the following:

> [I]n the case of the state taking private
> property there is an imbalance between
> the resources available to the parties
> which should be redressed by requiring

6

> the state to bear full financial burden
> of the individual whose property is being
> condemned . . . Excerpts from the Montana
> Constitutional Convention Vol. VII, pages
> 5631-5633, indicate that this imbalance
> underlay the adoption of Article II,
> Section 29, 1972 Montana Constitution.

Callant, 593 P.2d at 1039. In State Department of Highways v. Olsen (1975), 166 Mont. 139, 531 P.2d 1330, this Court described the legislature's intent as follows:

> The proceedings at the Constitutional
> Convention make it abundantly clear that
> it intended Article II, Section 29 to
> make the landowner whole in eminent
> domain proceedings to the extent that the
> amount of the judgment for the taking of
> his land and improvements would be a "net
> recovery" with expenses of litigation
> assessed against the State, where the
> landowner prevailed.

Olsen, 531 P.2d at 1335.

We have again reviewed the legislative history of Article II, § 29, and are convinced that an award of attorneys' fees in this case is consistent with the intent of the constitutional framers. The 1972 Constitutional Bill of Rights Committee comments on Article II, § 29, include the following:

> Delegate [George] James: [T]he committee
> unanimously approved substantive changes
> in the eminent domain section. The
> thrust of the committee effort was to
> assure the full and just compensation
> -- that full and just compensation be
> made in all eminent domain actions.
> Without it, some of the costs of eminent
> domain action fall where they do not
> belong -- on the person whose property is
> being condemned. In order to give
> substance to the citizen's effort to
> challenge the compensation figure of the
> condemnor, the last sentence of this
> provision was added. Those testifying in

7

opposition to the committee's original eminent domain proposal agreed that this sentence which awards necessary expenses of litigation to the private property owner when he is the prevailing party, is just. The committee intends, by "necessary expenses of litigation", all costs including appraiser's fee, attorney fees and court costs. It is felt that when -- this stipulation will produce a climate in which the condemnor's offer for compensation will be more -- will more adequately reflect the compensation to which the property owner is entitled. The property owner will have a chance to collect expenses he incurs in challenging the condemnor's action. In addition, it will redress the imbalance between the vast resources brought to bear by the state and those available to the individual property owner in contested cases. The committee recommends this section to the [Constitutional] Convention as insurance that the compensation to the private property owner will, in fact, be just. Delegate Proposal Number 75 was amended to accomplish this provision. I think you're all familiar with the term "the public good". Sometimes this is rather elusive and is used to condemn property and a figure which may be unjust to the property owner is not contested because of the cost of litigation. This [provision], I believe, will correct this situation. (Additions ours.)

Verbatim transcript, Montana Constitutional Convention, March 9, 1972, Vol. VI at 1825-1826. If we adopt the State's argument in this case, the costs of this litigation would undoubtedly fall where they do not belong -- on private property owners who are forced to bring a legal action in defense of their property rights. We believe that an award of attorneys' fees to the private property owners in this case reflects the compensation to which they are entitled.

8

Such an award will also serve to redress the imbalance of resources between the State and the private property owners.

It is obvious that the instant case is not a traditional eminent domain proceeding in the form of a condemnation proceeding or inverse condemnation action. In bringing this action, Galt sought a declaratory judgment that certain portions of the Stream Access Bill, §§ 23-2-301, et seq., MCA, were unconstitutional as a taking of private property without just compensation. Eminent domain is defined as the State's right "[t]o take private property for public use." Section 70-30-101, MCA. It was the legislature's enactment of statutes which resulted in an unconstitutional taking of private property without just compensation that characterizes this case as an eminent domain proceeding. As previously noted, the right to just compensation does not depend on the form of the action. Jacobs, supra. Accordingly, Article II, § 29 is applicable to the specific circumstances of this case.

In its second issue, the State argues that, even if Article II, § 29 applies, there was no actual "taking" for which Galt can be compensated. The District Court correctly identified the prerequisites of an award of attorneys' fees under Article II, § 29 as being (1) a taking or damaging of private property for public use, (2) litigation, and (3) the private property owner prevailing in the litigation. State v. Standley Brothers (Mont. 1985), 699 P.2d 60, 64, 42 St.Rep. 563, 568; Bozeman Parking Com'n. v. First Trust Co. (Mont. 1980), 619 P.2d 168, 171, 37 St.Rep. 1610, 1614. The State agrees that these are the statutory prerequisites and concedes that the second and third prerequisites have been met.

The State asserts that the District Court erred in concluding that private property had been taken or damaged

9

for public use. The District Court relied on language in Galt, supra, to conclude that private property was taken for a public use easement. The State contends that Galt did not consider or determine whether private property was taken or damaged for public use and that Galt simply determined that portions of the Stream Access Bill were invalid.

The State overlooks the fact that portions of the stream Access Bill were held to be unconstitutional for the very reason that those statutes served to take private property without just compensation. Galt, 731 P.2d at 913. The Galt decision specifically "reaffirms well established constitutional principles protecting [private] property interests from confiscation [by the State.]" Galt at 916. (Additions ours.) Because of our decision in Galt, the State is collaterally estopped from now raising the "taking" issue. Accordingly, the District Court was correct in concluding that all three of the statutory prerequisites for an award of attorneys' fees were met in this case.

We hold that Article II, § 29, specifically authorizes an award of attorneys' fees to the private property owners under the particular circumstances of this case. We limit this holding to the facts of this case and to the recognition that just compensation, including necessary expenses of litigation, is constitutionally required where the State takes private property for public use.

Galt requests an award of expenses of this appeal. An award to Galt of expenses on appeal, including attorneys' fees, is proper as "necessary expenses of litigation" under Article II, § 29 of the Montana Constitution. In addition, § 25-10-104(2), MCA, provides that costs of appeal must be awarded to the successful party. See also Rule 33, M.R.App.P. This Court requires that the District Court hold an evidentiary hearing to determine the amount of reasonable

attorneys' fees and costs.   State v. Helehan (Mont. 1980), 615 P.2d 925, 37 St.Rep. 1516.   Accordingly, this case is referred to the District Court with instructions to calculate and award reasonable attorneys' fees and cost of this appeal to Galt.

Affirmed with instructions to calculate and award attorneys' fees and costs of this appeal to Galt.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy, dissenting:

I dissent, though in so doing I realize that the District Court judge, in granting attorney fees, found his hands tied by the improvident decision of the majority in Jack E. Galt v. State of Montana and the Department of Fish, Wildlife and Parks (1987), ___ Mont. ___, 731 P.2d 912, 44 St.Rep. 103.

That majority decision took away from the people of this State and from the legislature the right to the full use of riverbeds up to the high water mark, a right before that decision recognized by state and federal statutes and courts. It is classic irony that the people now have to pay attorney fees to the parties that diminished their rights to use the riverbeds. Such are the consequences of departure from settled case law.

_____
Justice

Mr. Justice William E. Hunt, Sr.:

I concur in the dissent of Mr. Justice Sheehy.

_____
Justice