MR. JUSTICE MORRISON
delivered the Opinion of the Court.
Plaintiffs appeal the order of the First Judicial District Court granting summary judgment in favor of the defendant, State of Montana. We reverse.
In 1984, this Court decided the twin cases of Montana Coalition for Stream Access, Inc. v. Curran (Mont. 1984), [210 Mont. 38,] 682 P.2d 163, 41 St.Rep. 906, and Montana Coalition for Stream Access, Inc. v. Hildreth (Mont. 1984), [211 Mont. 29,] 684 P.2d 1088, 41 St.Rep. 1192. In Curran, we held that under the public trust doctrine as derived from the Montana Constitution the public has a right to use any surface waters capable of use for recreational purposes up to the high water marks and may portage around barriers in the water in the least intrusive manner possible. This holding was reaffirmed in Hildreth.
In response to these two decisions, the legislature enacted Section 23-2-301, et seq., MCA, addressing the recreational use of streams. Appellants, plaintiffs below, brought this action for declaratory relief pursuant to the Uniform Declaratory Judgment Act, Section 27-8-101 through 27-8-313, MCA, requesting the District Court to declare Section 23-2-301, et seq., MCA, unconstitutional as a taking of private property without just compensation. The District Court upheld the constitutionality of the statutes and awarded summary judgment in favor of the State.
Addressing the constitutionality of Sections 23-2-301 et seq., MCA, on appeal we frame the issues as follows:
1) Whether the public trust doctrine relating to water includes the use of adjoining land?
2) Whether Sections 23-2-301, et seq., MCA, permit uses of the bed and banks and adjoining land beyond the scope of the public trust doctrine?
Appellants challenge the following sections as unconstitutional:
“23-2-301. Definitions. For purposes of this part, the following definitions apply:
*145 “(2) ‘Class I waters’ means surface waters, other than lakes, that:
“(a) lie within the officially recorded federal government survey meander lines thereof;
“(b) flow over lands that have been judicially determined to be owned by the state by reason of application of the federal navigability test for state streambed ownership;
“(c) are or have been capable of supporting the following commercial activities: log floating, transportation of furs and skins, shipping, commercial guiding using multiperson watercraft, public transportation, or the transportation of merchandise, as these activities have been defined by published judicial opinion as of April 19, 1985; or “(d) are or have been capable of supporting commercial activity within the meaning of the federal navigability test for state streambed ownership
“(3) ‘Class II waters’ means all surface waters that are not class I waters, except lakes.
“(12) ‘Surface water’ means, for the purpose of determining the public’s access for recreational use, natural water body, its bed, and its banks up to the ordinary high-water mark.
“23-2-302. Recreational use permitted — limitations — exceptions. “(1) Except as provided in Subsections (2) through (5), all surface waters that are capable of recreational use may be so used by the public without regard to the ownership of the land underlying the waters.
“(2) The right of the public to make recreational use of surface waters does not include, without permission or contractual arrangement with the landowner:
“(a) the operation of all-terrain vehicles or other motorized vehicles not primarily designed for operation upon the water;
“(b) the recreational use of surface waters in a stock pond or other private impoundment fed by an intermittently flowing natural watercourse;
“(c) the recreational use of waters while diverted away from a natural water body for beneficial use pursuant to Title 85, Chapter 2, part 2 or 3, except for impoundments or diverted waters to which the owner has provided public access;
“(d) big game hunting except by long bow or shotgun when specifically authorized by the commission;
*146 “(e) overnight camping within sight of any occupied dwelling or within 500 yards of any occupied dwelling, whichever is less;
“(f) the placement or creation of any permanent duck blind, boat moorage, or any seasonal or other objects within sight of or within 500 yards of an occupied dwelling, whichever is less; or “(g) use of a streambed as a right-of-way for any purpose when water is not flowing therein.
“(3) The right of the public to make recreational use of class II waters does not include, without permission of the landowner:
“(a) big game hunting;
“(b) overnight camping;
“(c) the placement or creation of any seasonal object; or “(d) other activities which are not primarily water-related pleasure activities as defined in 23-2-301(10). * * *”
“23-2-311. Right to portage — establishment of portage route.
“(1) A member of the public making recreational use of surface waters may, above the ordinary high-water mark, portage around barriers in the least intrusive manner possible, avoiding damage to the landowner’s land and violation of his rights.
“(3)(e) The cost of establishing the portage route around artificial barriers must be borne by the involved landowner, except for the construction of notification signs of such route, which is the responsibility of the department. The cost of establishing a portage route around artificial barriers not owned by the landowner on whose land the portage route will be placed must be borne by the department
The public trust doctrine is found at Article IX, Section 3(3), of the Montana Constitution which provides:
“All surface, underground, flood and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and subject to appropriation for beneficial uses as provided by law.”
Section 70-1-202, MCA, provides:
“Property of the state — what included. The state is the owner of: “(1) all land below the water of a navigable lake or stream;
“(2) all property lawfully appropriated by it to its own use;
“(3) all property dedicated or granted to the state; and “(4) all property of which there is no other owner.”
Section 70-16-201, MCA, states:
“Owner of land bounded by water. Except where the grant under *147 which the land is held indicates a different intent, the owner of the land, when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream.”
As noted in Curran, supra, and Hildreth, supra, the constitutional provision clearly provides the State owns the waters for the benefit of its people. In those decisions, we further held that the public’s right to use the waters includes the right of use of the bed and banks up to the high water mark even though the fee title in the land resides with the adjoining landowners. We did not define what kinds of use are permissible under the public trust doctrine.
The issue before us now is whether the public trust doctrine includes the types of use of the bed and banks found in Sections 23-2-301, et seq., MCA. Sections 23-2-302, MCA, has provided for a public right to build duck blinds, boat moorages, and camp overnight, so long as not within sight of or within 500 yards of an occupied dwelling, whichever is less.
The public trust doctrine in Montana’s Constitution grants public ownership in water not in beds and banks of streams. While the public has the right to use the water for recreational purposes and minimal use of underlying and adjoining real estate essential to enjoyment of its ownership in water, there is no attendant right that such use be as convenient, productive, and comfortable as possible.
The public has a right of use up to the high water mark, but only such use as is necessary to utilization of the water itself. We hold that any use of the bed and banks must be of minimal impact.
Appellants contend the right of public use set forth in the Cur-ran and Hildreth decisions applies only to the surface of navigable streams. This is incorrect. In Hildreth we explicitly included the right to use of the bed and banks. 684 P.2d 1094, 41 St.Rep. 1199. In Curran, we adopted a recreational use test to determine navigability. Appellants apparently contend that the right of public use is restricted to Class I waters; i.e., those waters considered to be navigable under the federal test. This is not so. As we said in Curran, “The capability of use of the waters for recreational purposes determines their availability for recreational use by the public. Streambed ownership by a private party is irrelevant.” 682 P.2d 170, 41 St.Rep. 914. The Montana Constitution makes no distinction between Class I and II waters. All waters are owned by the State for the use of its people.
*148 Pursuant to Section 23-2-302, MCA, overnight camping and construction of a duck blind are permissible within a few feet of an occupied dwelling so long as these activities are not “within sight.” Similarly, a boat mooring could be placed directly in front of someone’s home if obscured from vision.
Overnight camping is not always necessary for utilization of the water resource itself. The public can float and fish many of our rivers without camping overnight. The statute is overbroad in giving the public right to a recreational use which is not necessary for the public’s enjoyment of its water ownership. The same can be said of constructing permanent objects between high water marks. Although duck blinds may be necessary for enjoying the ownership interests in certain large bodies of water, the right to construct permanent improvements on any commercially navigable stream does not follow.
Big game hunting as authorized by Section 23-2-302(d), between high water marks, is not permitted under any circumstances because it is not a necessary part of the easement granted the public for its enjoyment of the water. Further, although the recreational user has a right to portage around obstructions minimally impacting the adjoining landowner’s fee interest, there can be no responsibility on behalf of the landowner to pay for such portage route. The landowner receives no benefit from the portage. The benefit flows to the public and the expense should be borne by the State.
We reaffirm well established constitutional principles protecting property interests from confiscation. Landowners, through whose property a water course flows as defined in Curran and Hildreth, supra, have their fee impressed with a dominant estate in favor of the public. This easement must be narrowly confined so that impact to beds and banks owned by private individuals is minimal. Only that use which is necessary for the public to enjoy its ownership of the water resource will be recognized as within the easement’s scope. The real property interests of private landowners are important as are the public’s property interest in water. Both are constitutionally protected. These competing interests, when in conflict, must be reconciled to the extent possible.
Accordingly, we find Sections 23-2-302(2)(d), (e), and (f), MCA, to be unconstitutional. Further, we find Section 23-2-311(3)(e), MCA, to be unconstitutional insofar as it requires the landowner to bear the cost of constructing a portage route around artificial barriers. The balance of the statutory scheme accords with *149 the Montana Constitution and the opinions of this Court. We find the unconstitutional portions of the statute to be subject to severance and therefore, leave the balance of the statute intact.
We enter declaratory judgment in favor of appellants in accordance with the views herein expressed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and WEBER concur.