JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Public Lands Access Association, Inc. (PLAA) appeals from a 2012 *281 judgment of the Fifth Judicial District Court, Madison County, denying the public access to the Ruby River at Seyler Lane and Seyler Bridge.
¶2 James Kennedy (Kennedy) cross-appeals from a 2008 judgment of the Fifth Judicial District Court, Madison County, granting PLAA summary judgment on the issue of public access to the Ruby River from Lewis Bridge. We affirm in part, reverse in part, and remand for further proceedings.
¶3 We have consolidated the appeal and cross-appeal issues into the following issues:

1. Did the District Court correctly define the width of the public right-of-way at the intersection of Seyler Lane and the Ruby River?

2. In determining the width of the public right-of-way at the intersection of Seyler Lane and the Ruby River, did the District Court err by excluding evidence of recreational use?

3. Is the use of a public road right-of-way established by prescription limited to historic use, or does it extend to all public uses, including recreation?

4. Did the District Court err by rejecting certificates of survey (COS) as evidence of the width of the existing public right-of-way at the intersection of Seyler Lane and the Ruby River?

5. Did the District Court effectuate an unconstitutional taking of Kennedy’s property when it ruled that the public may access the Ruby River via the right-of-way granted by the Lewis Lane deed?

FACTUAL AND PROCEDURAL BACKGROUND
¶4 Duncan District Road, Lewis Lane, and Seyler Lane are county roads in Madison County, Montana. All three roads cross the Ruby River by way of bridges. The bridges were constructed by, and are currently maintained by, Madison County. Kennedy owns land that abuts the public rights-of-way on both Seyler Lane and Lewis Lane. ¶5 PLAA filed a complaint against Madison County in May 2004, alleging that individuals who owned property adjacent to the three bridges had erected fences along each county road to the ends of each bridge, preventing the public from using the rights-of-way to access the Ruby River. PLAA twice amended its complaint and ultimately sought, among other things, a declaratory judgment that the public may use Duncan District Road, Lewis Lane, and Seyler Lane, and their bridges and bridge abutments, to access the Ruby River. Kennedy intervened *282 as a defendant.[1]
¶6 The parties moved for summary judgment, and, after holding a hearing on the matter, the District Court issued an order on October 1, 2008. The court held, in part, that the public rights-of-way at Duncan District Road and Lewis Lane are each 60 feet wide, and the public is entitled to use the entire 60 foot width to access the Ruby River. With respect to Seyler Lane, the court determined at the hearing that, because the right-of-way was established by prescriptive use as opposed to statutory petition (Duncan District Road) or dedication or grant (Lewis Lane), additional fact finding was necessary to determine the width of the right-of-way and whether the public could use it to access the Ruby River. Summary judgment pertaining to Seyler Lane was therefore denied, and a trial was ordered to resolve the remaining issues.
¶7 The parties stipulated to the facts set forth below, through paragraph 15, prior to trial. Seyler Lane and Seyler Bridge were constructed by Madison County, but there are no records which verify the date of their original construction. Madison County re-constructed Seyler Bridge in its present location after a 1976 flood. Kennedy owns the fee title to the land underlying Seyler Bridge and the bridge approaches on Seyler Lane, including the bed and banks of the Ruby River. The Seyler Bridge surface is 24 feet wide. The area of the bridge surface between the guard rails on the bridge is 21.35 feet wide. The paved portion of the road approaching the bridge is approximately 20 feet wide and sits atop road fill that slopes down and away from the edge of the pavement. The bottom edge of the road fill is referred to as “toe of road fill.”
¶8 In June 2004, Madison County issued Kennedy an “Encroachment Permit for Fence on County Bridge Right-of-Way Madison, Montana” (the “Encroachment Permit”). Pursuant to the Encroachment Permit, Kennedy installed private fences at three of the bridge corners at Seyler Bridge. Some of the fences are located at the toe of road fill, while others are inside or outside the toe of road fill. The fences do not impede, block, or intimidate the public from reaching the Ruby River. ¶9 Madison County has assumed jurisdiction over Seyler Lane and Seyler Bridge and is responsible for maintaining them. Madison County maintains the paved surface of Seyler Lane, including the toe *283 and shoulder, as well as the areas beyond the travelled surface and adjacent subsurface, by mowing, snow plowing, and weed spraying. Madison County also maintains the subjacent and lateral support of Seyler Bridge, including the bridge abutments, wing walls, and bridge spans.
¶ 10 Finally, and of particular import to this appeal, the parties agreed upon the following fact:
Seyler Bridge and its approaches on Seyler Lane is a county road right-of-way that was established by prescriptive use. There is no dispute that the public has the right to use the paved portion of Seyler Bridge and its approaches on Seyler Lane for travel across Seyler Bridge over the Ruby River.
¶11 A bench trial was held January 9-11, 2012, at which both parties presented exhibits and witness testimony. On April 16, 2012, the District Court issued its findings of fact, conclusions of law, and final judgment. We will refer to the findings and conclusions in more detail below. The gist of the District Court’s decision, however, was that PLAA failed to prove the existence of a public prescriptive easement beyond the fences at Seyler Bridge by clear and convincing evidence.
¶12 The final judgment provides:
1. Westerly and southerly of the Seyler Bridge, the public has a prescriptive right to travel and to use Seyler Lane between the fences and likewise upon the Seyler Bridge.
2. Madison County has a prescriptive right independent and separate from public use to lateral and subjacent support for Seyler Lane and Seyler Bridge, together with such additional land as is reasonable and necessary for maintenance and repair.
3. Except as described in paragraph 2 above, there is no public right whatsoever on either side of Seyler Lane outside the fences or beyond the traveled way where there is no fence.
¶13 PLAA appeals this decision, and Kennedy cross-appeals from the court’s order regarding the parties’ motions for summary judgment.
STANDARD OF REVIEW
¶14 We review for clear error a district court’s findings of fact. Boyne USA, Inc. v. Spanish Peaks Dev., LLC, 2013 MT 1, ¶ 28, 3.68 Mont. 143, 292 P.3d 432. Clear error exists if substantial credible evidence fails to support the findings of fact, if the district court misapprehended the evidence’s effect, or if we have a definite and firm conviction that the district court made a mistake. Spanish Peaks, ¶ 28. We review for correctness a district court’s conclusions of law. Spanish Peaks, ¶ 28. *284 ¶15 We review a district court’s ruling on motions for summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. Mt. West Bank, N.A. v. Cherrad, LLC, 2013 MT 99, ¶ 25, 369 Mont. 492, 301 P.3d 796.
DISCUSSION
¶16 The issues PLAA raises on appeal relate to one overarching question: May the public use the Seyler Lane right-of-way to access the Ruby River? This inquiry breaks down into two subsets of questions: What is the width of the Seyler Lane right-of-way, and may the public use the right-of-way for recreational purposes? We address these issues in turn.
¶17 Issue One: Did the District Court correctly define the width of the public right-of-way at the intersection of Seyler Lane and the Ruby River?
¶18 The parties stipulated, and the District Court found, that Seyler Bridge and its approaches on Seyler Lane is a county road right-of-way that was established by prescriptive use. Despite this finding, the court determined that the public could only use the portion of the right-of-way “between the fences and ... upon the Seyler Bridge.” It reserved use of the areas necessary for maintenance and repairs, which included lateral and subjacent support for Seyler Lane and Seyler Bridge and “such additional land as is reasonable and necessary,” exclusively for Madison County. By doing so, the District Court effectively split the public right-of-way into a narrower primary public right-of-way for travel and a wider secondary limited easement for maintenance and repairs, and explicitly excluded the public from using the County’s secondary easement.
¶19 For the reasons stated below, we reverse the District Court’s decision that the County has a secondary easement for purposes of construction, maintenance and repair that is separate from the public road right-of-way. In a public road right-of-way established by prescription, the areas necessary to support and maintain the road, as well as the land needed to make the road safe and convenient for public use, are included in the public right-of-way.
Secondary Easements
¶20 PLAA argues that, because Seyler Bridge and its approaches on Seyler Lane is a county road right-of-way acquired by prescriptive use, the public has obtained by prescription the right to use both the portion of the roadway actually traveled or paved and the land needed for the support and maintenance of the paved and traveled portion, *285 including shoulders and ditches. PLAA asserts that the District Court’s recognition of a secondary easement “was unnecessary and improperly limited the public’s use of the rights acquired in the Seyler Lane prescriptive easement by granting a de facto private easement to the County for maintenance activities” (emphasis in original).
¶21 In support of finding that the county holds a secondary easement for repair and maintenance, the District Court relied upon the following cases: Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881 (1941); Guthrie v. Hardy, 2001 MT 122, 305 Mont. 367, 28 P.3d 467; Kelly v. Wallace, 1998 MT 307, 292 Mont. 129, 972 P.2d 1117; and Ferguson v. Standley, 89 Mont. 489, 300 P. 245 (1931). Unlike the case at hand, however, these cases all involved private easements. None involved a public road.
¶22 Our seminal case on secondary easements is Laden. There, the plaintiff landowners had an easement in a ditch that ran through the defendant’s land. The defendant did not contest this right, but did challenge the plaintiffs’ right to enter upon the defendant’s lands in order to reach the ditch and to use lands on the sides of the ditch for maintenance and repair. We ruled for the plaintiffs and recognized that “ ‘[t]he owner of a dominant estate having an easement, has the right to enter upon the servient estate and make repairs necessary for the reasonable and convenient use of the easement, doing no unnecessary injury to the servient estate.’ ’’ Laden, 112 Mont. at 306, 116 P.2d at 884 (internal quotations omitted). Such a right is called a “secondary easement,” and is a “mere incident of the easement that passes by express or implied grant, or is acquired by prescription.” Laden, 112 Mont. at 305-06, 116 P.2d at 883 (internal quotations omitted). We stated that the secondary easement “can be exercised only when necessary and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement.” Laden, 112 Mont. at 306, 116 P.2d at 884 (quotation omitted).
¶23 Since Laden, we have recognized secondary easement rights in a number of cases involving private ditch easements. See e.g. Shammel v. Vogl, 144 Mont. 354, 396 P.2d 103 (1964); O’Connor v. Brodie, 153 Mont. 129, 454 P.2d 920 (1969); Sharon v. Hayden, 246 Mont. 186, 803 P.2d 1083 (1990); Kephart v. Portmann, 259 Mont. 232, 855 P.2d 120 (1993); Engel v. Gampp, 2000 MT 17, 298 Mont. 116, 993 P.2d 701; Musselshell Ranch Co. v. Seidel-Joukova, 2011 MT 217, 362 Mont. 1, 261 P.3d 570. In 1981, the Montana Legislature codified secondary easement rights. Section 70-17-112, MCA, provides that an owner of *286 a canal or ditch easement has a secondary easement to enter the servient tenement to inspect, repair, and maintain the canal or ditch.
¶24 At issue in the present case, in contrast to a private easement, is a county road acquired by prescriptive use. When a county road is established, the public acquires the right-of-way “and the incidents necessary to enjoying and maintaining it.” Section 7-14-2107(3), MCA. We previously have observed that Montana statutes “clarify that a public highway consists of more than the surface of a roadway,” and is not “limited to the driving surface.” DeVoe v. State, 281 Mont. 356, 369-70, 935 P.2d 256, 264 (1997). Our case law is also clear that the establishment of a public road by prescriptive use contemplates the general public’s use of the roadway as well as the land needed for construction, repairs and maintenance. We do not separate the different uses to create two distinct interests-a public road for travel and a secondary easement for the County’s maintenance-as the District Court did. Rather, we recognize one public road right-of-way. See Rasmussen v. Fowler, 245 Mont. 308, 312, 800 P.2d 1053, 1056 (1990) (finding a public prescriptive road easement based upon evidence of county maintenance of the road as well as other public uses); McClurg v. Flathead County Comm’rs, 188 Mont. 20, 24, 610 P.2d 1153, 1156 (1980) (finding a public prescriptive road easement based in part upon evidence of “grading, laying gravel and other maintenance of the road”); Smith v. Russell, 2003 MT 326, ¶¶ 14-17, 21, 318 Mont. 336, 80 P.3d 431 (finding that the public’s use of a road coupled with Toole County’s maintenance of the road established a public highway); Hitshew v. Butte/Silver Bow Co., 1999 MT 26, ¶ 18, 293 Mont. 212, 974 P.2d 650 (“[T]he public’s use coupled with a county government’s regular maintenance of a roadway without the landowner’s permission is evidence of adverse use.”); Swandal Ranch Co. v. Hunt, 276 Mont. 229, 235-36, 915 P.2d 840 (1996) (determining that evidence of regular county road maintenance supported the element of adversity in a claim to a public prescriptive road easement); PLAA v. Jones, 2004 MT 394, ¶ 33, 325 Mont. 236, 104 P.3d 496 (finding a public prescriptive road easement based upon evidence of public use, including recreational use, and Teton County’s periodic maintenance of the road).
¶25 This approach is consistent with the general rule that the width of a public prescriptive roadway extends beyond the traveled portion of the road to include areas necessary for its support and maintenance. See e.g., McKenzie Co. v. Reichman, 812 N.W.2d 332, 344 (N.D. 2012) (“The width of a prescriptive road must be determined by actual use *287 over the prescriptive period and may include shoulders and ditches needed to support and maintain the traveled portion of the road.”); Nikiel v. Buffalo, 7 Misc. 2d 667, 670 (N.Y. Sup. 1957) (“[T]he width and extent of a highway established by prescription or use ... is not necessarily limited to the beaten path or traveled tract. It carries with it ... such width as is reasonably necessary for the safety and convenience of the traveling public and for ordinary repairs and improvements. A highway established by user includes the traveled tract and whatever land is necessarily used or is incidental thereto for highway purposes.”); Yturria Town & Improv. Co. v. Hidalgo Co., 125 S.W.2d 1092, 1094 (Tex. App. 1939) (“When a road is established by prescription, the right is not limited to the beaten path used, but may be made to include sufficient land for drainage ditches, repairs and the convenience of the traveling public.”); Keidel v. Rask, 290 N.W.2d 255, 258 (N.D. 1980) (“The width of a prescriptive public road established in the absence of a law specifying its width ... necessarily includes not only the actual traveled surface area of the roadway, but also any adjacent land which is needed for the prescription to be maintained as a public road, including any land reasonably necessary for ditches, shoulders, and slopes.”); Teadtke v. Havranek, 777 N.W.2d 810, 820 (Neb. 2010) (“If the public has acquired the right to a highway by prescription, it is not limited in width to the actual beaten path, but the right extends to such width as is reasonably necessary for public travel.”); Campbell v. Covington Co., 137 So. 111 (Miss. 1931) (In a highway established by prescription, “the public are not limited to the actual width used by them-the beaten path. The prescriptive right carries with it the beaten path and whatever is necessary to make the beaten path a usable highway ... .”); see also Jon W. Bruce and James W. Ely, Jr., The Law of Easements and Licenses in Land § 7:12, 7-29 (Thomson Reuters 2013) (“In the case of a prescriptive roadway, particularly one acquired by the public, the width may extend beyond the paved or packed road surface to include areas used for cars to pass each other, for drainage ditches, and for shoulders.”).
¶26 We agree with these authorities and hold that the concept of a limited secondary easement does not apply to determine the width of a public road right-of-way established by prescriptive use. Here, the parties stipulated that there is a county road right-of-way established by prescriptive use at Seyler Lane and Seyler Bridge. The issue is thus not whether a public road right-of-way exists, but rather the width of that already existing right-of-way. Pursuant to the above discussion, we determine the Seyler Lane public right-of-way is not confined to the *288 portion of the road actually traveled. Instead, its width extends beyond the traveled way and includes whatever land is reasonably necessary to support and maintain the road and for the road to be safely and conveniently used.
Width of Seyler Lane right-of-way
¶27 The District Court did not establish a definite width for the County’s secondary easement. Instead, it defined the easement by reference to “the lateral and subjacent support for Seyler Lane and Seyler Bridge” and to “such additional land as is reasonable and necessary for maintenance and repair.” Because we reverse the District Court’s conclusion that the County holds a separate secondary easement, we remand to determine the width of the single public road right-of-way. That determination must be made in accordance with the guidelines set forth in this opinion.
¶28 We begin with the well-recognized principle that the minimum 60-foot road width required by § 7-14-2112(1), MCA, does not apply to roads established by prescriptive use. Wohl v. City of Missoula, 2013 MT 46, ¶ 42, 369 Mont. 108, 300 P.3d 1119; State v. Portmann, 149 Mont. 91, 98, 423 P.2d 56, 56 (1967). Rather, the width of a roadway acquired by prescription is “determined as a question of fact by the character and extent of its use and may be more or less than the width of highways established by statute.” Portmann, 149 Mont. at 95, 423 P.2d at 58 (citing State ex rel. Game, Forestation and Parks Commn. v. Hull, 97 N.W.2d 535 (Neb. 1959)) (also citing Descheemaeker v. Anderson, 131 Mont. 322, 326, 310 P.2d 587, 589 (1957) (“the public may obtain title by adverse possession of that only which it has occupied during the full statutory period.”)). See also Lovvorn v. Salisbury, 701 P.2d 142, 144 (Colo. App. 1985) (width of public road established by prescriptive use is to be made by reference to the width established by the use). Therefore, the District Court must consider, in addition to the land necessary to support and maintain the road, historical evidence of the nature of the enjoyment by which the public acquired the right-of-way. Section 70-17-106, MCA.
¶29 A bridge is a part of the public road upon which it is built. Section 60-1-103(22), MCA; State ex rel. Furnish v. Mullendore, 53 Mont. 109, 113-15, 161 P. 949, 951-52 (1916) (“a bridge is part and parcel of the highway upon which it is built.... If the highways belong to the public, it must follow that anything permanently affixed to them, either in the way of repairs or in the form of completed structures, such as bridges and the like, become a part of them, and as much of public right as the highways themselves.”); State ex rel. Foster v. Ritch, 49 Mont. 155, 156- *289 57, 140 P. 731, 731 (1914) (“A bridge is to be treated as but a portion of a public highway.”) Abridge includes “all appurtenances, additions, alterations, improvements and replacements and the approaches to the bridge, lands used in connection with the bridge, and improvements incident or integral to the bridge.” Section 60-1-103(2), MCA. This statute makes clear that Seyler Bridge, including its appurtenances, additions, alterations, improvements and replacements and the approaches to the bridge, lands used in connection with the bridge, and improvements incident or integral to the bridge, is part of the Seyler Lane county road right-of-way. This public road right-of-way must be considered along with evidence of the public’s use in determining width.
¶30 Like the Seyler Lane roadway, which requires areas beyond the traveled surface for its support and maintenance, Seyler Bridge’s upkeep necessitates use of adjacent land. Madison County maintains the subjacent and lateral support for Seyler Bridge. Bridge inspectors Daniel Gravage and Shane Escott testified that access to the Ruby River for purposes of performing essential bridge inspections requires use of neighboring land. Consistent with §§ 60-1-103(2) and 7-14-2107(3), MCA, the District Court should consider the land used for support and maintenance of the bridge in determining the width of the public’s right-of-way. The width of a county road or bridge acquired by prescription must be sufficient to encompass the incidents necessary to enjoying, supporting and maintaining the roadway.
¶31 This analysis regarding the width of the right-of-way is consistent with the Encroachment Permit Madison County issued to Kennedy in 2004. The Encroachment Permit allowed Kennedy to construct and maintain “a fence on the county bridge right-of-way for the purpose of keeping livestock off the county road[.]” Kennedy installed the fences at Seyler Bridge pursuant to this permit. The right-of-way’s boundaries are not defined by Kennedy’s fences that narrow at the bridge; rather, the fences cut through the public road right-of-way.
¶32 In sum, we reverse the District Court’s determination that the County holds a secondary easement that is independent of the public’s right-of-way. We remand for the court to consider the evidence in the record, and conduct whatever additional proceedings it deems necessary, to establish a definite width of the single, unified, public road right-of-way at Seyler Lane.
¶33 Issue Two: In determining the width of the public right-of-way at the intersection of Seyler Lane and the Ruby River, did the District Court err by excluding evidence of recreational use ?
*290 ¶34 PLAA argues that the District Court erred by excluding evidence of historical recreational use by the public in determining the width of the public road right-of-way at Seyler Bridge. During the trial, the court determined there was no “basis to utilize recreational use for purposes of establishing a prescriptive right” and, accordingly, prohibited PLAA from presenting evidence of recreational use of the Seyler Lane right-of-way. Following trial, PLAA submitted an offer of proof regarding recreational use at Seyler Bridge. The court subsequently issued its Findings of Fact and Conclusions of Law, concluding that “[Recreational use is insufficient to establish a prescriptive easement.”
¶35 This Court has held that “ ‘seasonal use by hunters, fisherman, hikers, campers, use by neighbors visiting neighbors, and persons cutting Christmas trees and gathering firewood are not sufficient to establish [prescriptive] use.’ ” Leisz v. Avista Corp., 2007 MT 347, ¶ 37, 340 Mont. 294, 174 P.3d 481 (brackets in original) (quoting McCauley v. Thompson-Nistler, 2000 MT 215, ¶ 38, 301 Mont. 81, 10 P.3d 794). We have not, however, held that recreational use may never be considered. See e.g. Brown & Brown of MT, Inc. v. Raty, 2012 MT 264, ¶ 34, 367 Mont. 67, 289 P.3d 156 (concluding that “the undisputed evidence establishes that residential and recreational uses were within the scope of the prescriptive easement”); Schmid v. Pastor, 2009 MT 280, ¶ 21, 352 Mont. 178, 216 P.3d 192 (finding recreational use sufficient to give notice to the servient owner of an adverse claim to support a narrow prescriptive easement for recreational, but not residential, purposes); PLAA v. Jones, 2004 MT 394, ¶ 33, 325 Mont. 236, 104 P.3d 496 (considering recreational use among other factors establishing prescriptive use of road).
¶36 We conclude that the trial court’s blanket exclusion of recreational use evidence was improper. Recreational use may be one factor in “the nature of the enjoyment” by which the public road right-of-way was acquired by prescriptive use and, thus, may be considered in determining the width of the public road right-of-way. Further, in assessing the nature of such recreational use, we have recognized that implied acquiescence does not amount to permission, to defeat a showing of adverse use. Brown & Brown of MT, Inc., ¶ 26. In Lunceford v. Trenk, 163 Mont. 504, 518 P.2d 266 (1974), we affirmed a judgment finding a prescriptive easement and declaring a public roadway, rejecting the argument that the use was permissive. We followed long-established law that, to prove the existence of a public road by prescription, “it must be shown that the public followed a *291 definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner.” Lunceford, 163 Mont. at 508, 518 P.2d at 268. We noted that “[the] testimony indicated that the use was not permissive, that no request for permission to use the road was asked nor given to a vast majority of the users. Plaintiffs assumed they had a right to use the road and used it.” Lunceford, 163 Mont. at 509, 518 P.2d at 268. “Our case law has long recognized that ‘[continuous use’ does not mean constant use; rather, if the claimant used the property in dispute whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted.” Brown & Brown of MT Inc., ¶ 34 (citations omitted).
¶37 On remand, the plaintiffs are entitled to present evidence of recreational use to inform the District Court’s determination of the width of the public right-of-way. As PLAA recognized during trial, that evidence will have to be confined to use pre-dating the 1985 statute that prohibits acquiring a prescriptive easement through “the entering or crossing of private property to reach surface waters.” Section 23-2-322(2)(b), MCA.
¶38 Accordingly, we remand for the District Court to consider the evidence in the record, and conduct whatever additional proceedings it deems necessary, to establish a definite width of the public road right-of-way at Seyler Bridge. The District Court should consider the lands used in connection with the bridge (§ 60-1-103(2), MCA); “the incidents necessary to enjoying and maintaining it” (§ 7-14-2107(3), MCA); and historical evidence of the “nature of the enjoyment by which it was acquired” (§ 70-17-106, MCA), including evidence of recreational use. Any recreational uses by the public beyond the width necessary for the construction, maintenance and repair of the roadway and the bridge would have to be established through clear and convincing evidence for the requisite statutory period. See Brown & Brown of MT, Inc., ¶ 19; Portmann, 149 Mont. at 95-96, 423 P.2d at 58. ¶39 Issue Three: Is the use of a public road right-of-way established by prescription limited to historic use, or does it extend to all public uses, including recreation?
¶40 The essential dispute here is whether the public can access the Ruby River from Seyler Lane for recreational purposes-specifically, whether the public can travel from Seyler Lane down to the high water mark of the river. The District Court determined it could not. The court’s holding was based on its finding that PLAA failed to submit sufficient evidence of adverse public use to establish a prescriptive *292 easement over the land between the fences that abut Seyler Bridge and the high water mark of the Ruby River; and on its conclusion that usage of a prescriptive road is limited to the original use during the prescriptive period.
¶41 The District Court did recognize a prescriptive right for the County to use any land needed for maintenance and repair, but determined that such land is not available for public use. The court concluded that “County maintenance does not show usage by the public at large for purposes of public travel over areas utilized for maintenance of the road and bridge,” and that “[t]here is a distinction between the right of the government to maintain the roadway bridge and the right of the public to travel everywhere maintenance activity is undertaken.” Finally, the court determined that the “County prescriptive right to use maintenance areas cannot be transformed into a new traveled way.”
¶42 We have reversed the District Court’s conclusion that the areas needed for maintenance and repairs are not a part of the public right-of-way. We must now consider whether PLAA is required to show that particular areas within the public road right-of-way have been used adversely to access the Ruby River in order for the public to now use them as such. We determine it is not. Once a public road is established by prescriptive use, the use of that road is not limited to the adverse usage through which the road was acquired.
¶43 Section 70-17-106, MCA, provides that “[t]he extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired.” We have applied this statute in many cases involving private prescriptive easements and determined that it “limits owners of a prescriptive easement to the use that was established during the prescriptive period.” Kelly v. Wallace, 1998 MT 307, ¶ 31, 292 Mont. 129, 972 P.2d 1117. However, in cases in which we have found that a public prescriptive road has been established, we have not held that the scope of use was limited to the historic use through which the road was acquired. Seee.g. Swandal Ranch Co., 276 Mont. 229, 915 P.2d 840; Granite Co. v. Komberec, 245 Mont. 252, 800 P.2d 166 (1990) Coverruled on other grounds by Warnack v. Coneen Family Trust, 266 Mont. 203, 879 P.2d 715 (1994)); Johnson v. McMillan, 238 Mont. 393, 778 P.2d 395 (1989) (overruled on other grounds by Warnack, 266 Mont. 203, 879 P.2d 715); McClurg, 188 Mont. 20, 610 P.2d 1153; Hitshew v. Butte/Silver Bow Co., 1999 MT 26, 293 Mont. 212, 974 P.2d 650; Clark v. Heirs & Devisees of Dwyer, 2007 MT 237, 339 Mont. 197, 170 P.3d 927; Jones, 2004 MT 394, 325 Mont. 236, 104 P.3d 496.
*293 ¶44 The District Court’s conclusion that use of a prescriptive road is limited to the original use during the prescriptive period relied upon a 2000 Attorney General Opinion (AG Opinion) and State v. Portmann, 149 Mont. 91, 423 P.2d 56 (1967). The AG Opinion provides that “for county roads and bridges established by prescription, their use as access to waters is dependent upon their width and use during the prescriptive period,” and cites to Kelly and Portmann for support. 48 Op. Att’y Gen. no. 13, § III(c) (2000). Notably, Kelly involved a private easement, and Portmann is not on point.
¶45 In Portmann, we held that “the rights acquired by adverse use can never exceed the greatest use of the land for the full prescriptive period.” Portmann, 149 Mont. at 96, 423 P.2d at 58. However, at issue in Portmann was not the scope of use of an easement, but rather the width of the easement. The Court did not examine the scope of permitted uses within the prescriptive roadway. Portmann thus does not stand for the proposition that the scope of use of a public prescriptive road is limited to historical adverse usage through which the road was acquired. Rather, as discussed above, it supports our conclusion that public uses should be considered in determining the width of the public road right-of-way.
¶46 Our review of case law from other jurisdictions reveals that the scope of use for public prescriptive easements generally is not construed as strictly as the scope of use for private prescriptive easements. “Numerous authorities hold that the scope of public prescriptive easements is broad enough to include reasonably foreseeable public uses.” Bruce & Ely, Law of Easements and Licenses in Land § 8:12, 8-42.
¶47 In Lovvorn, 701 P.2d at 144, the Colorado Court of Appeals determined that a public prescriptive easement created through historical vehicular travel could also be used to trail cattle. The court reasoned:
The ultimate distinction between a public road and a private easement, however acquired, is that the private easement can be, and is, limited to specific individuals and/or specific uses while a public road is open to all members of the public for any uses consistent with the dimensions, type of surface, and location of the roadway. There is no logical way to advise the members of the public as to which portions of the public roads they travel are subject to specific historic uses, much less to enforce the use of the roads for only those limited purposes. Thus, we conclude that once a road has been declared to be public, all uses that are permissible *294 to the public under the laws of this state are permissible uses.
(Emphasis original). In Boykin v. Carbon Co. Bd. Of Comm’rs, 124 P.3d 677 (Wyo. 2005), the Wyoming Supreme Court adopted the same rule, and held that the restrictive use principle applicable between private parties did not apply to claims for the establishment of public highway right-of-ways. The court adopted the district court’s reasoning:
The use of a public highway right-of-way cannot be limited to historical uses as may be the case for private claimants of particular prescriptive easements. To rule otherwise would take us down a road we should fear to travel.... The use of the road may well increase in the future, and the method of such increased use cannot be foreseen. Such is the nature of a public highway right-of-way. To rule otherwise would defeat the very nature of a public road system.
Boykin, 124 P.3d at 686-87 (citing Heath v. Parker, 30 P.3d 746, 750 (Colo. 2001)).
¶48 Many other jurisdictions have similarly distinguished the scope of use of public prescriptive easements from that of private prescriptive easements. In Bentel v. Co. of Bannock, 656 P.2d 1383 (Idaho 1983), the Idaho Supreme Court found that the general rule that prescriptive easements are limited to the actual use which gave rise to the easement applies to private, not public, prescriptive easements. The Court recognized that “[i]n more contemporary decisions, other jurisdictions have held the scope of such [public prescriptive] easements comprehensive enough to include reasonably foreseeable public uses of such roadways ... .’’Bentel, 656 P.2d at 1386. The court held that a highway easement acquired by prescription was no less comprehensive than one acquired by grant, dedication or condemnation. Bentel, 656 P.2d at 1386. See also Pickett v. Cal. Pac. Utils., 619 P.2d 325, 327 (Utah 1980) (adopting a rule that “the easement in a public highway, which the public acquires, includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities, which the advance of civilization may render suitable for a highway.”); Trigg v. Allemand, 619 P.2d 573, 578 (N.M.App. 1980) (“Once a road is found to be open to the public and free and common to all citizens, they should be open for all uses reasonably foreseeable.”); Westlake v. Duncan, Dieckman & Duncan Min. Co., 307 S.W.2d 220, 222 (Ark. 1957) (“[I]n case of a private easement, as contrasted with a public highway, it is not permissible to impose a burden which is greater than the use which brought the private easement into existence. We do not *295 find, however, that the same rule has been applied to a public highway acquired by prescription.”).
¶49 In Montana, although we have not yet explicitly addressed the scope of use of public roads acquired by prescription, we have discussed our expansive interpretation of the uses of public highways in general. In Kipp v. Davis-Daly Copper Co., 41 Mont. 509, 516, 518, 110 P. 237, 240 (1910), the Court recognized that highways may be used “in any manner or for any purpose which is reasonably incidental] to the appropriation of them to public travel” and “for all uses to which [they] might reasonably be put in view of improved methods and the increasing needs of the public....” We explained that “a highway is created for the use of the public, not only in view of its necessities and requirements as they exist, but also in view of the constantly changing modes and conditions of travel and transportation ... ”Kipp, 41 Mont. at 517, 110 P. at 240.
¶50 In Bolinger, we observed the following regarding a public prescriptive easement:
[T]he easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed.
Where land is conveyed for a public highway the implication must be that it will be used as the convenience and welfare of the public may demand, although that demand may be augmented by the increase of population.
[T]he dedicator is presumed to have intended the property to be used in such a way by the public as will be most convenient and comfortable and according to not only the properties and usages known at the time of dedication, but also to those justified by lapse of time and change of conditions.
Bolinger, 158 Mont. at 514, 520-21, 493 P.2d at 1065-66, 1069 (quoting Cater v. Northwestern Tel. Exch. Co., 63 N.W. 111, 112 (Minn. 1895); Collop v. United R.R.s of San Francisco, 228 P. 59, 61 (Cal. App. 1924); Wattson v. Eldridge, 278 P. 236, 238 (Cal. 1929)).
¶51 When a public roadway is acquired through prescriptive use instead of a grant or dedication, the same issue pertaining to usage arises: Should public use of that easement be limited to the usage that existed at the time the easement was established, or, rather, should *296 usage accommodate the passage of time and the public’s ongoing needs? Just as the Court has determined that the uses of a dedicated public highway change over time, so do the uses of a public roadway acquired by prescription. Pursuant to the above discussion, we determine the scope of a public road right-of-way established by prescriptive use is not strictly limited to the adverse usage through which the easement was acquired, as it is in the case of private prescriptive easements. The scope includes public uses that are reasonably incident to the uses through which the easement was acquired and uses that are reasonably foreseeable. Hence, once a public prescriptive road is established, the fact that a certain public use was not adverse does not mean that the use is not permitted.
¶52 In the case before us, the District Court determined that the public could not travel on the land between the fences at Seyler Bridge and the high water mark of the Ruby River. The use of the Seyler Lane right-of-way as access to the Ruby River is not dependent upon whether this use was established adversely during the prescriptive period. Foot travel over a roadway is, and has always been, a foreseeable use of the road surface as well as any shoulders, embankments and abutments supporting the roadway. Separate from the question of width, use of the road for access to the Ruby River is a reasonably foreseeable use of a public road right-of-way that crosses a river.
¶53 Issue Four: Did the District Court err by rejecting certificates of survey (COS) as evidence of the width of the existing public right-of-way at the intersection of Seyler Lane and the Ruby River?
¶54 PLAA maintains that the District Court erred by disregarding the COS presented by PLAA at trial and incorrectly concluded such surveys, as a matter of law, could not establish the existence of a prescriptive easement. The District Court did not determine that the certificates were inadmissible, nor did the court conclude that COS can never prove the existence of an easement. Rather, the court found that the specific surveys PLAA presented did not provide information on the dimensions of the Seyler Lane right-of-way.
¶55 Because we are remanding for the District Court to determine the width of the public road right-of-way and instructing the court to conduct whatever additional fact-finding it deems appropriate, it is not necessary for us to further address this issue at this time. This Opinion in no way precludes PLAA from presenting to the court on remand any COS that provide information regarding the dimensions of the right-of-way at issue.
*297 ¶56 Issue Five: Did the District Court effectuate an unconstitutional taking of Kennedy’s property when it ruled that the public may access the Ruby River via the right-of-way granted by the Lewis Lane deed?
¶57 Kennedy cross-appeals the District Court’s grant of summary judgment to PLAA on the issue of public access at Lewis Lane. In its 2008 order, the District Court determined that the public could use the 60-foot-wide right-of-way at Lewis Lane and Lewis Bridge to reach the Ruby River. Kennedy maintains that the court erred for two reasons. First, he argues that the Lewis Lane right-of-way was never intended to be used for access to the Ruby River for fishing, hunting, wading, and boating. Second, Kennedy asserts that the District Court’s conclusion that the public may access the Ruby River where Lewis Lane crosses the Ruby River constitutes an unconstitutional taking of his property because he owns the riverbed underlying the public right-of-way.
¶58 We reject Kennedy’s contentions. The District Court did not err, or effectuate a taking, when it ruled the public may access the Ruby River via the right-of-way the County purchased in the Lewis Lane deed. Kennedy’s predecessor in interest expressly granted a public right-of-way without limiting its uses. Further, it is well-settled in Montana that the public may use the beds of non-navigable rivers for recreation without effectuating a taking.
¶59 We agree with the District Court that Kennedy’s contention that the 60-foot-wide right-of-way his predecessor in interest granted cannot be used for river access must fail. Deeds granting a “right-of-way” have, in some cases, been construed as granting a fee interest in land.[2] Bruce & Ely, Law of Easements and Licenses in Land § 1:22,1-57, n. 3. Express language in a deed granting a “right-of-way” may, alternately, be considered to create an express easement. Bruce & Ely, Law of Easements and Licenses in Land § 1:24, 1-60 to 1-62; see Kenneally v. Clark, 2011 U.S. Dist. LEXIS 122357, 9-10 (D. Mont. Sept. 21, 2011) (discussing rules about defining express easements). Generally, a public easement described in a deed will be upheld as long as the deed’s language sufficiently locates the easement. State by Mont. State Fish & Game Comm’n v. Cronin, 179 Mont. 481, 486, 587 P.2d *298 395, 399 (1978). The language is construed in accordance with the clear intent of the parties. Cronin, 179 Mont, at 486, 587 P.2d at 399. In Bolinger, we explained:
Whether or not a particular use amounts to a diversion from that for which the dedication was made depends on the circumstances of the dedication and the intention of the party making it. It has been held that such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. In other words, the dedicator is presumed to have intended the property to be used in such way by the public as will be most convenient and comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of times and change of conditions.
Bolinger, 158 Mont, at 521, 493 P.2d at 1069 (quoting Wattson, 278 P. at 238).
¶60 Kennedy has failed to demonstrate that his predecessor did not intend to authorize access to the Ruby River from Lewis Lane for public fishing, wading, hunting or other uses. Assuming arguendo that the interest Kennedy’s predecessor granted in the deed to Lewis Lane was not a fee interest, the deed still permits the uses Kennedy contests. The deed dedicated a 60-foot-wide right-of-way for Lewis Lane, including Lewis Bridge and the land and water underlying it, as a County road. The deed expressly stated that the land was to be used as a “public highway” and if it should be abandoned from that use, would revert to the grantor and his heirs and assigns. Thus, the deed’s express terms dedicated the right-of-way for public use. It did not restrict the public from any use on that stretch of the road. Since this grant created a public right-of-way, we presume that Kennedy’s predecessor intended to provide for not only those public uses known at the time, but those justified by lapse of time and change of conditions. These include convenient and comfortable public uses, including access to the Ruby River. We therefore agree with the District Court that the public may use this right-of-way to access and enter the river. We also agree with the District Court’s reasoning that “where a county road intersects state waters, the portion of each which is congruent with the other creates two over lapping public rights of way.”
¶61 Kennedy’s takings argument is unpersuasive because Kennedy has no compensable property interest in the property he claims has been taken from him. Kennedy contends that, as owner of the *299 streambed underlying the non-navigable Ruby River, he has the right to control access to the waters above, including the right to exclude persons from wading into the river or floating on the water. He maintains that declaring a public easement between the high water marks of the Ruby River at Lewis Lane amounts to an unconstitutional taking of his private property without due process and just compensation. In making this claim, Kennedy argues our Stream Access Law is unconstitutional and challenges our decisions in Mont. Coalition for Stream Access v. Curran, 210 Mont. 38, 682 P.2d 163 (1984), and Mont. Coalition for Stream Access v. Hildreth, 211 Mont. 29, 684 P.2d 1088 (1984).
¶62 Kennedy’s argument fails for two reasons. First, when Kennedy’s predecessor in interest deeded Lewis Lane road to the County, he also granted the swath of riverbed underlying the bridge and within the right-of-way to the public. Kennedy’s predecessor did not exclude the land underlying the bridge from the deed conveying the right-of-way. The public retains the right to use this bought-and-paid-for right-of-way. Kennedy has no right to complain that the public is using the right-of-way the County purchased from Kennedy’s predecessor. Yet, even ifKennedy’s predecessor had not expressly granted a right-of-way to the County for use by the public, it is settled law in Montana that the public may use the beds of non-navigable rivers, up to the high watermark, for recreation. See §§ 23-2-301 to 21-2-322, MCA; Curran, 210 Mont, at 53, 682 P.2d at 171; Hildreth, 211 Mont, at 35-36, 684 P.2d at 1091; Galt v. State, 225 Mont. 142, 148, 731 P.2d 912, 916 (1987). Our precedent makes manifestly clear that this public use does not constitute a compensable taking of private property: N o title passes with the use right.
¶63 In Montana, waters within the state are State property held in trust for the people. Mont. Const, art. IX, § 3(3). Kennedy’s reliance on Ill. C. R. Co. v. Ill., 146 U.S. 387, 13 S. Ct. 110 (1892) (henceforth, “Illinois Central”), U.S. v. Causby, 328 U.S. 256, 66 S. Ct 1062 (1946) and Kaiser Aetna v. U.S., 444 U.S. 164, 100 S. Ct. 383 (1979), to assert he may control use of the water overlying the section of riverbed he owns, is misplaced. We have already explained that our Constitution, statutes and precedent preclude a riparian landowner from excluding public use of a streambed.
¶64 Kennedy misconstrues Illinois Central to assert that his ownership of the streambed also gives him ownership of the water. The dicta from Illinois Central, to which Kennedy cites, operate to illustrate the difference between the State’s “ownership” of submerged *300 lands and the State’s ownership of public lands it could sell. Illinois Central, 146 U.S. at 452, 13 S. Ct. at 118 (“[The State’s] title [to the beds of Lake Michigan] necessarily carries with it control over the waters above them .... But it is a title different in character from that which the State holds in lands intended for sale.”). The key distinction, the U.S. Supreme Court pointed out, was that the State’s ownership of submerged lands “is a title held in trust for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein freed from the obstruction or interference of private parties.” Illinois Central, 146 U.S. at 452, 13 S. Ct. at 118. The State could not grant title to submerged lands where “abdication is not consistent with the exercise of that trust which requires the government of the State to preserve such waters for the use of the public.” Illinois Central, 146 U.S. at 452, 13 S. Ct. at 118 (emphasis added). Even upon transfer, the State’s control for purposes of the trust can never be lost. Illinois Central, 146 U.S. at 453, 13 S. Ct. at 118. The U.S. Supreme Court stated:
The State can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties, except in the instance of parcels mentioned for the improvement of the navigation and use of the waters, or when parcels can be disposed of without impairment of the public interest in what remains, than it can abdicate its police powers in the administration of government and the preservation of the peace.
Illinois Central, 146 U.S. at 453, 13 S. Ct. at 118. In fact, Illinois Central illustrates the principle that the State must protect the public’s opportunity to use and enjoy the waters it holds in trust for the people “freed from the obstruction or interference of private parties.” Illinois Central, 146 U.S. at 452, 13 S. Ct. at 118.
¶65 In Montana, the public trust as to waters is enshrined in our laws and our Constitution. See Mont. Const, art. IX, 3(3); §§ 23-2-301 to 21-2-322, MCA. Article IX, § 3(3) of the Montand Constitution provides:
All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.
The State does not only own navigable waters as a public trust; it also owns non-navigable waters. Galt, 225 Mont, at 147, 731 P.2d at 915; see Mont. Const, art. IX, § 3(3).
*301 ¶66 Our decisions in Curran and Hildreth, as codified, protect the public’s right to recreationally use its non-navigable waters, free from interference by private landowners. In Curran, codified at § 23-2-302, MCA, we held that “any surface waters that are capable of recreational use may be so used by the public without regard to streambed ownership or navigability for nonrecreational purposes.” Curran, 210 Mont, at 53, 682 P.2d at 171. We reaffirmed Curran’s holding that any waters capable of recreational use could be so used in Hildreth. Hildreth, 211 Mont, at 35, 684 P.2d at 1091. There, we observed that, because the Montana Constitution provides the State owns the waters for the benefit of its people, and places no limit on their use, “this Court cannot limit their use by inventing some restrictive test.” Hildreth, 211 Mont, at 35,684 P.2d at 1091. The public has a broad use right to surface waters and private landowners may not place obstacles that impede the public’s exercise of its right. Curran, 210 Mont, at 52-53, 682 P.2d at 170-71. This use right is not a property right, or an interest in the landowners’ property. See § 23-2-309, MCA. Rather, it amounts to a recognition of the physical reality that in order for the public to recreationally use its water resource, some “minimal” contact with the banks and beds of rivers is generally necessary. See Galt, 225 Mont, at 147, 731 P.2d at 915.
¶67 Because the Montana Constitution grants the State ownership of all waters within its borders, Kennedy’s reliance on Causby, 328 U.S. at 259, 66 S. Ct 1064-65, to assert he may control use of the Ruby River’s waters is also misplaced. Causby involved use of airspace over a chicken farm that interfered with the farmers’ business. See Causby, 328 U.S. at 259, 66 S. Ct. at 1064-65. To hold that a riparian owner “owns” the “space” overlying a riverbed, when that space is occupied by water, would be to divest the State of title to waters it owns by virtue of article IX, § 3(3), of the Montana Constitution.
¶68 Similarly, the State’s constitutionally-granted public trust ownership of all waters in Montana distinguishes this case from Kaiser Aetna. That case concerned a “fishpond” on private property in Hawaii, where owners had dredged a channel to connect the pond to the ocean. Kaiser Aetna, 444 U.S. at 166-68,100 S. Ct. at 386-87. Significantly to the majority opinion, Hawaiian fishponds like the one at issue had always been considered private property in Hawaii. Kaiser Aetna, 444 U.S. at 166, 179, 100 S. Ct. at 386, 392-93. Kaiser Aetna’s recognition that a fishpond could constitute private property hinged on State law. Here, Montana’s Constitution grants the State ownership of waters *302 within the state. Mont. Const, art. IX, § 3(3). Thus, Kaiser Aetna-scnd Hawaiian law-cannot support the proposition that a Montana riparian owner owns the water overlying the bed of a non-navigable river.
¶69 It is settled law in Montana that public recreational use of State-owned waters is not a taking because title to non-navigable riverbeds does not pass to the public. As we stated in State ex rel. Perry v. District Court, “ ‘[decisions construing the Constitution should be followed, in the absence of cogent reasons to the contrary ... .’ ” 145 Mont. 287, 310, 400 P.2d 648, 660 (1965) (quoting State ex. rel. Kain v. Fischl, 94 Mont. 92, 20 P.2d 1057 (1933)). Some insignificant use of the riverbeds and river banks is, and always has been, necessary to the public’s use and enjoyment of its resource. That use does not amount to an easement or any other “interest” in land. See § 23-2-309, MCA. In Curran we explained that since “the question of title to the bed is irrelevant to determination of navigability for use, and Curran has no claim to the waters,” no taking of private property could occur. Curran, 210 Mont, at 53, 682 P.2d at 171. We also observed in Hildreth, where Hildreth brought a similar claim, that no taking of private property occurs in public use of beds and banks of waters up to the high water mark because title does not pass with the use right. Hildreth, 211 Mont, at 36-37, 684 P.2d at 1092. As observed by the United States District Court in Madison v. Graham, no private property right is “being extracted” from Kennedy: “In fact, the public has no interest at all in the private streambed per se, but only in the publicly-owned surface waters that traverse the streambed.” Madison v. Graham, 126 F. Supp. 2d 1320, 1324 (D. Mont. 2001). We can see no reason to overturn these longstanding interpretations of our Constitution and our laws.
¶70 The terms of the deed granting the public right-of-way, along with the Montana Constitution, the public trust doctrine and this Court’s decisions in Curran, Hildreth and Galt, foreclose Kennedy’s argument. Kennedy’s predecessor in interest granted a right-of-way encompassing parts of the Ruby River’s bed to the County, and the public may use that right-of-way to access the Ruby River. Kennedy never owned a property right that allowed him to exclude the public from using its water resource, including the riverbed and banks up to the high water mark. Nothing has been taken from him. Kennedy has offered no convincing reason to disrupt what has long been settled constitutional law in Montana.
*303 CONCLUSION
¶71 We conclude that the District Court erred by finding a secondary easement that is independent and separate from the public’s easement. The areas that are reasonably necessary to support and maintain Seyler Bridge, and to ensure the public’s safe and convenient use of it, are included in the Seyler Lane public road right-of-way. We therefore remand for the District Court to consider the evidence in the record and conduct whatever additional proceedings it deems necessary to establish a definite width of the public right-of-way, applying the principles stated in this Opinion.
¶72 We further determine that the scope of use of the public road right-of-way is not limited to the adverse usage through which it was acquired and that any foreseeable uses of a public road right-of-way, including recreational use, are permitted.
¶73 Finally, Kennedy’s takings argument does not hold water: He presents no persuasive argument that a compensable property interest has been taken from him or that we should overturn our precedent and disrupt long-settled constitutional law.
¶74 Reversed and remanded for further proceedings consistent with this Opinion.
JUSTICES COTTER, BAKER, DISTRICT JUDGE KRUEGER, sitting for former JUSTICE MORRIS and DISTRICT JUDGE MENAHAN, sitting for CHIEF JUSTICE McGRATH concur.

 The Montana Stockgrowers Association and Hamilton Ranches also intervened as defendants, but have since stipulated to being dismissed from the case.

 It should be noted that in Montana there is a rebuttable presumption that the owner of land bounded by a road or street takes title to the middle of the road, unless a different intent appears from the deed. McPherson v. Monegan, 120 Mont. 454, 458-59, 187 P.2d 542, 544 (1947).