The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: September 1, 2022

## NO. S-1-SC-38195

**ADOBE WHITEWATER CLUB OF NEW MEXICO, a non-profit corporation, NEW MEXICO WILDLIFE FEDERATION, a non-profit corporation, and NEW MEXICO CHAPTER OF BACKCOUNTRY HUNTERS & ANGLERS, a non-profit organization,**

Petitioners,

v.

**NEW MEXICO STATE GAME COMMISSION,**

Respondent,

and

**CHAMA TROUTSTALKERS, LLC, RIO DULCE RANCH, Z&T CATTLE COMPANY, LLC, RANCHO DEL OSO PARDO, INC., RIVER BEND RANCH, CHAMA III, LLC, FENN FARM, THREE RIVERS CATTLE LTD., CO., FLYING H. RANCH INC., SPUR LAKE CATTLE CO., BALLARD RANCH, DWAYNE AND CRESSIE BROWN, COTHAM RANCH, WAPITI RIVER RANCH, MULCOCK RANCH, WILBANKS CATTLE CO., 130 RANCH, WCT RANCH, THE NEW MEXICO FARM AND LIVESTOCK BUREAU, CHAMA PEAK LAND ALLIANCE, NEW MEXICO CATTLE GROWERS' ASSOCIATION, NEW MEXICO COUNCIL OF**

**OUTFITTERS AND GUIDES, AND UPPER PECOS WATERSHED ASSOCIATION,**

     Intervenors-Respondents.

**ORIGINAL PROCEEDING**

Gallegos Law Firm, P.C.
Jake Eugene Gallegos
Santa Fe, NM

Cohen Law Firm, LLC
Seth T. Cohen
Santa Fe, NM

for Petitioners


Hector H. Balderas, Attorney General
Tania Maestas, Chief Deputy Attorney General
Santa Fe, NM

Cuddy & McCarthy, LLP
Aaron J. Wolf
Santa Fe, NM

for Respondent


Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Marco Estevan Gonzales
Jeremy K. Harrison
Albuquerque, NM

for Intervenors-Respondents

Peifer, Hanson, Mullins & Baker, P.A.
Mark Travis Baker
Matthew Eric Jackson
Rebekah Anne Gallegos
Albuquerque, NM

for Amici Curiae – Senator Tom Udall and Senator Martin Heinrich

Logan M. Glasenapp
Albuquerque, NM

for Amici Curiae – New Mexico Wilderness Alliance, League of United Latin American Citizens, The Hispano Roundtable of New Mexico, Hispanics Enjoying Camping, Hunting, and the Outdoors, The Nuestra Tierra Conservation Project

Freedman, Boyd, Hollander, Goldberg, Urias, & Ward P.A.
Joseph Goldberg
Vincent J. Ward
Michael Lee Goldberg
Christopher Allen Dodd
Albuquerque, NM

Matthew L. Garcia, Chief General Counsel
Jonathan Jacob Guss, Associate General Counsel
Santa Fe, NM

for Interested Party – Governor Michelle Lujan Grisham

**OPINION**

**VIGIL, Justice.**

{1}     This mandamus proceeding concerns the scope of the public's right to use public water flowing over private property. Article XVI, Section 2 of the New Mexico Constitution provides that "[t]he unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, *is hereby declared to belong to the public*." (Emphasis added.) In *State ex rel. State Game Commission v. Red River Valley Co.* (*Red River*), this Court held that Article XVI, Section 2 conveys to the public the right to recreate and fish in public water. 1945-NMSC-034, ¶ 59, 51 N.M. 207, 182 P.2d 421. The question here is whether the right to recreate and fish in public water also allows the public the right to touch the privately owned beds below those waters. We conclude that it does.

{2}     The New Mexico State Game Commission (Commission) promulgated a series of regulations, 19.31.22 NMAC (1/22/2018) (Regulations), outlining the process for landowners to obtain a certificate allowing them to close public access to segments of public water flowing over private property. *See* 19.31.22.6 NMAC (1/22/2018). In particular, access is closed to the "riverbed or streambed or lakebed" located on private property. *Id.* The reasoning is that because the landowner holds title to the bed below public water, the landowner may exclude the public from

accessing the public water if it involves walking or wading on the privately owned bed. Petitioners, nonprofit organizations and corporations affected by the Regulations, sought a writ of prohibitory mandamus challenging the constitutionality of the Regulations.

{3} This Court assumed original jurisdiction over the petition under Article VI, Section 3 of the New Mexico Constitution. Concluding that the Regulations are an unconstitutional infringement on the public's right to use public water and that the Commission lacked the legislative authority to promulgate the Regulations, we issued the writ of mandamus and an order on March 2, 2022, directing the Commission to withdraw the Regulations as void and unconstitutional. In this opinion, we explain the reasoning and rationale underlying our issuance of the writ of mandamus.

I.      BACKGROUND

{4} In 2015, the Legislature amended NMSA 1978, Section 17-4-6 (2015), adding a one-sentence Subsection C:

> No person engaged in hunting, fishing, trapping, camping, hiking, sightseeing, the operation of watercraft or any other recreational use *shall walk or wade onto private property through non-navigable public water* or access public water via private property unless the private property owner or lessee or person in control of private lands has expressly consented in writing.

2

(Emphasis added.) Purportedly acting under the above-emphasized language of Section 17-4-6(C), the Commission promulgated the Regulations. *See* 19.31.22 NMAC (1/22/2018).

{5} The Regulations' "Objective" is to implement

> the process for a landowner to be issued a certificate and signage by the director and the commission that recognizes that within the landowner's private property is a segment of a non-navigable public water, whose riverbed or streambed or lakebed is closed to access without written permission from the landowner.

19.31.22.6 NMAC (1/22/2018). Once a landowner is issued a certificate, the landowner is then issued signs from the Commission which are "prima facie evidence that the property subject to the sign is private property, subject to the laws, rules, and regulations of trespass." 19.31.22.13(F) NMAC (1/22/2018). Members of the public may then be cited for criminal trespass if they touch the now-closed "riverbed or streambed or lakebed," 19.31.22.6 NMAC (1/22/2018), beneath the public water. 19.31.22.13(F) NMAC (1/22/2018).

{6} To obtain the certificate and signage necessary to close access to segments of public water, landowners must fill out an application providing "substantial evidence which is probative of the waters, watercourse or [rivers] being non-navigable at the time of statehood, on a segment-by-segment basis." 19.31.22.8(B)(4) NMAC (1/22/2018). The Regulations define "Non-navigable public water" as water that

3

"was not used at the time of statehood, in its ordinary and natural condition, as a highway for commerce over which trade and travel was or may have been conducted in the customary modes of trade or travel on water." 19.31.22.7(G) NMAC (1/22/2018).

{7} Following the promulgation of the Regulations, Petitioners filed a verified petition for prohibitory mandamus in this Court to nullify any certificates issued under the Regulations and to enjoin the Commission from enforcing the Regulations. Petitioners argue the Regulations violate Article XVI, Section 2 by impermissibly interfering with the public's constitutional right to use public water and that the Commission lacks the authority under Section 17-4-6(C) to promulgate the Regulations. In its answer brief, the Commission concedes the Regulations conflict with Article XVI, Section 2.

{8} This Court granted leave for Intervenor-Respondents ("Intervenors"), who are owners of private property over which nonnavigable waters flow, to intervene. Intervenors argue mandamus should be denied because the Regulations do not privatize or close public waters, but instead express the existing right to exclude trespassers on privately owned riverbeds.

## II. DISCUSSION

## A. Mandamus Is Appropriate

{9} Before addressing Petitioners' constitutional challenges to the Regulations, we explain the basis for our exercise of original mandamus jurisdiction. Article VI, Section 3 of the New Mexico Constitution gives this Court "original jurisdiction in . . . mandamus against all state officers, boards and commissions" and the "power to issue writs of mandamus . . . and all other writs necessary or proper for the complete exercise of its jurisdiction." "Although relief by mandamus is most often applied to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law, the writ may also be used in appropriate circumstances in a prohibitory manner to prohibit unconstitutional official action." *State ex rel. Sugg v. Oliver*, 2020-NMSC-002, ¶ 7, 456 P.3d 1065 (internal quotation marks and citation omitted). "In considering whether to issue a prohibitory mandamus, we do not assess the wisdom of the public official's act; we determine whether that act goes beyond the bounds established by the New Mexico Constitution." *Am. Fed'n of State, Cnty. & Mun. Emps. v. Martinez*, 2011-NMSC-018, ¶ 4, 150 N.M. 132, 257 P.3d 952.

{10} Petitioners and Intervenors disagree about whether mandamus is the proper vehicle to address the fate of the Regulations. To resolve such disagreements, this

5

Court applies a multifactor test to evaluate whether mandamus is appropriate. Mandamus is a discretionary writ that will lie when there is a purely legal issue "that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as a direct appeal." *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 11, 127 N.M. 272, 980 P.2d 55; *see also* NMSA 1978, § 44-2-5 (1884).

{11} In applying the *Sandel* factors, we conclude that mandamus is appropriate. First, the scope of the public's ownership rights in the natural waters of New Mexico and the competing real property interests of private landowners implicates a question of great public importance. Second, whether it is unconstitutional for the Regulations to restrict the recreating public from accessing public waters flowing over private property and whether the Commission may promulgate the Regulations in the first place are both legal questions that can be decided on undisputed facts. Third, the importance of the constitutional issue and the need for clarification on public water access and private property ownership merits an expeditious resolution that this Court is uniquely positioned to provide. Therefore, we determine all three *Sandel* factors are met and that mandamus is appropriate in this case.

**B.      Natural Water Within the State Belongs to the Public But the Beds May Be Privately Owned**

{12}      Having determined that prohibitory mandamus is an appropriate vehicle to address Petitioners' claims, we begin by reviewing the relevant law on public ownership rights in state waters and private ownership rights in the beds that lie beneath those waters. Such a review is necessary for understanding why the Regulations' threshold for closing public access, which is based on navigability, is irrelevant to the scope of the right of the public to use public waters under Article XVI, Section 2.

{13}      In 1907, the Territorial Legislature enacted the Water Code that declared, "All natural waters flowing in streams and watercourses, whether such be perennial, or torrential, within the limits of the state of New Mexico, belong to the public and are subject to appropriation for beneficial use." NMSA 1978, § 72-1-1 (1907). This was a declaration of "prior existing law, always the rule and practice under Spanish and Mexican dominion." *Red River*, 1945-NMSC-034, ¶ 21 (internal quotation marks and citation omitted). The prior-appropriation doctrine was then incorporated into the New Mexico Constitution:

> The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, *is hereby declared to belong to the public* and to be subject to appropriation for beneficial use, in accordance with the laws of the state. Priority of appropriation shall give the better right.

7

N.M. Const. art. XVI, § 2 (emphasis added).

{14}     In 1945, this Court determined that Article XVI, Section 2, combined with prestatehood law, established a public right to recreate in the waters of New Mexico and that this right is equal to the right of the owners of the land near the water. *Red River*, 1945-NMSC-034, ¶ 59 (holding that a landowner with private property bordering and below public water had "no right of recreation or fishery distinct from the right of the general public"). In *Red River*, we addressed whether a landowner who owned land on both sides of Conchas Lake, deemed nonnavigable water, could exclude others from fishing in boats on the lake. *Id.* ¶¶ 1-13. We acknowledged ownership in the banks and beds of a body of water may be private but emphasized that such ownership does not change the fact that the water, next to the banks and above the beds, is public. *Id.* ¶ 37.

{15}     In analyzing the permissible uses of public water, this Court rejected limiting the public's right to those of traditional navigation. *See id.* ¶ 36 ("[U]ses of public water are not to be confined to the conventional ones first known and enjoyed."). In support of the rejection, we noted the historical expansion of the public's use of public water:

> At one time, public waters were thought of only as they afforded rights of navigation to the height of tide water; later they were extended to include all clearly navigable streams, and later still, to streams which would be used, not for boats of commerce, but only for the floating of

8

logs and other items of commerce; and, later has come the recreational use where the strict test of navigability earlier applied is less rigidly adhered to.

*Id.* ¶ 35. With this historical backdrop, we concluded that the scope of the public's right to use public waters is a matter of New Mexico law and that such right includes fishing and recreation. *Id.* ¶¶ 35-37, 59. The conclusion that state law governs the scope of the right of the public to use public waters over private beds tracks with federal law. *See PPL Mont., LLC v. Montana*, 565 U.S. 576, 604 (2012) ("[T]he [s]tates retain residual power to determine the scope of the public trust over waters within their borders, while federal law determines riverbed title.").

{16}    Under federal law, title to land under nonnavigable waters remains with the United States, *United States v. State of Utah*, 283 U.S. 64, 75 (1931), and title to land under navigable waters rests with the states. *Utah Div. of State Lands v. United States*, 482 U.S. 193, 196 (1987). This rule that the states "hold title to the beds under navigable waters has [its] origins in English common law." *PPL Mont., LLC*, 565 U.S. at 589. In England, there was a distinction "between waters subject to the ebb and flow of the tide (royal rivers) and nontidal waters (public highways)." *Id.* "With respect to royal rivers, the Crown was presumed to hold title to the riverbed and soil, but the public retained the right of passage and the right to fish in the stream." *Id.*

9

For public highways, "the public also retained the right of water passage; but title to the riverbed and soil, as a general matter, was held in private ownership." *Id.*

{17} The tide-based distinction was ill-suited for the United States, and by the late nineteenth century, the prevailing doctrine for determining title to riverbeds was "navigability in fact." *Id.* at 590. The question of navigability for determining riverbed title is governed by federal law, which provides that public rivers are navigable in fact "when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce." *Id.* at 591-92 (internal quotation marks and citation omitted). That said, the beds to both navigable waters and nonnavigable waters—whether title is vested in the state or the United States—are still subject to state law under the "public trust doctrine." *Id.* at 603-04; *see also Red River*, 1945-NMSC-034, ¶ 259 (opinion on second motion for rehearing) ("These waters are publici juris and the state's control of them is plenary; that is, complete; subject no doubt to governmental uses by the United States.").

{18} The public trust doctrine "concerns public access to the waters above . . . beds for purposes of navigation, fishing, and other recreational uses." *PPL Mont., LLC*, 565 U.S. at 603. The public trust doctrine is a matter of state law subject only to governmental regulation by the United States under the Commerce Clause and admiralty power. *Id.* at 604. "Under accepted principles of federalism, the [s]tates

retain residual power to determine the scope of the public trust over waters within their borders, while federal law determines riverbed title." *Id.*; *see also State ex rel. Erickson v. McLean*, 1957-NMSC-012, ¶ 23, 62 N.M. 264, 308 P.2d 983 ("The state as owner of water has the right to prescribe how it may be used.").

{19} Thus, while the federal "navigability" test is used to determine title to the beds beneath water, such a test is irrelevant when determining the scope of public use of public waters. *Mont. Coal. for Stream Access, Inc. v. Curran*, 682 P.2d 163, 170 (Mont. 1984) ("Navigability for use is a matter governed by state law. It is a separate concept from the federal question of determining navigability for title purposes."). Moreover, "[p]rivate ownership of the land underlying natural lakes and streams does not defeat the [s]tate's power to regulate the use of the water or defeat whatever right the public has to be on the water." *J.J.N.P. Co. v. State*, 655 P.2d 1133, 1137 (Utah 1982). This is why, in *Red River*, we could reject the traditional navigability test—the test applied by the Regulations—for determining public use and instead conclude that the scope of public trust to waters in New Mexico includes fishing and recreation. 1945-NMSC-034, ¶¶ 35, 43, 48. New Mexico is not alone in concluding title to the beds beneath water is immaterial in determining the scope of public use. Montana, Idaho, Iowa, Minnesota, North Dakota, Oregon, Utah, Wyoming, and South Dakota have all recognized public ownership and use of water is distinct from

bed ownership. *See Parks v. Cooper*, 2004 SD 27, ¶ 46, 676 N.W. 2d 823 (describing the states—including New Mexico—where the public trust doctrine applies to water independent of ownership of the underlying land).

{20} With the understanding that state law governs the scope of the public's right to use waters and that public use within New Mexico includes fishing and recreation, we now turn to the merits of Petitioners' claims. First, we address the constitutionality of the Regulations and Section 17-4-6(C). We then consider Intervenors' argument on judicial taking.

**C. The Regulations Are Unconstitutional**

{21} Petitioners challenge the constitutionality of the Regulations and the Commission's authority under Section 17-4-6(C) to promulgate the Regulations. "We review questions of statutory and constitutional interpretation de novo." *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 11, 289 P.3d 1232.

{22} Petitioners argue the Regulations are unconstitutional because Article XVI, Section 2 and this Court's decision in *Red River* implicitly recognize the public's right to use streambeds and banks. Petitioners contend that if the public cannot use streambeds and banks in the exercise of its right to public waters, as a practical matter, the public "could enjoy no fishing or recreational rights upon much of the

12

public water of this state." *Red River*, 1945-NMSC-034, ¶ 43. On the other hand, Intervenors argue that when a member of the public walks or wades in a river where the bed is privately owned, that person is a trespasser, and only when a landowner bars a person from floating upon public water that can be used without walking and wading does the landowner interfere with the person's right to use the water. Intervenors contend because the Regulations merely reiterate the existing right to exclude trespassers on privately owned riverbeds, they are constitutional. We are not persuaded by Intervenors' arguments.

{23} We conclude under Article XVI, Section 2 and our holding in *Red River* that the public has the right to recreate and fish in public waters and that this right includes the privilege to do such acts as are reasonably necessary to effect the enjoyment of such right. *See Hartman v. Tresise*, 84 P. 685, 692 (Colo. 1905) (Bailey, J., dissenting) ("[T]he people have the right of way in the bed of the stream for all purposes not inconsistent with the constitutional grant."); *see also Galt v. State*, 731 P.2d 912, 915 (Mont. 1987) ("The public has a right of use up to the high water mark, but only such use as is [reasonably] necessary to utilization of the water itself."); *Conatser v. Johnson*, 2008 UT 48, ¶ 26, 194 P.3d 897 (holding that the public's easement includes touching riverbeds because "touching the water's bed is reasonably necessary for the effective enjoyment of" the easement). Walking and

13

wading on the privately owned beds beneath public water is reasonably necessary for the enjoyment of many forms of fishing and recreation. Having said that, we stress that the public may neither trespass on privately owned land to access public water, nor trespass on privately owned land from public water. *See Red River*, 1945-NMSC-034, ¶ 32 ("Access to this public water can be, and must be, reached without such trespass.").

{24} Article XVI, Section 2 declares that the natural waters of New Mexico "belong to the public and [are] subject to appropriation for beneficial use, in accordance with the laws of the state." Thus, individuals have no ownership interest in those natural waters, only the right to put the water to certain uses. *See* N.M. Const. art. XVI, § 3; *see also Snow v. Abalos*, 1914-NMSC-022, ¶ 11, 18 N.M. 681, 140 P. 1044 ("The water in the public stream belongs to the public. The appropriator does not acquire a right to specific water flowing in the stream, but only the right to take therefrom a given quantity of water, for a specified purpose."). As reflected above, this is true whether the public water is navigable or nonnavigable. A determination on navigability only goes to who has title to the bed below the public water, *Red River*, 1945-NMSC-034, ¶¶ 18, 37, not to the scope of public use.

{25} The state, as a trustee, regulates the water for the benefit of the people. *See State ex rel. Bliss v. Dority*, 1950-NMSC-066, ¶ 11, 55 N.M. 12, 225 P.2d 1007.

14

> Public ownership is founded on the principle that water, a scarce and essential resource in this area of the country, is indispensable to the welfare of all the people; and the [s]tate must therefore assume the responsibility of allocating the use of water for the benefit and welfare of the people of the [s]tate as a whole.

*J.J.N.P.*, 655 P.2d at 1136. "A corollary of the proposition that the public owns the water is the rule that there is a public easement over the water regardless of who owns the water beds beneath the water." *Id.* In New Mexico, we have recognized that the scope of the public's easement in state waters includes fishing and recreational activities. *Red River*, 1945-NMSC-034, ¶¶ 26, 59. The question now is should the scope of the public's easement be interpreted narrowly and limited to those activities which may be performed *upon the water*, as argued by Intervenors, *see Day v. Armstrong*, 362 P.2d 137 (Wyo. 1961), or should the scope of the public's easement be interpreted broadly to include lawful activities that *utilize* the water, as argued by Petitioners, *see Conatser*, 2008 UT 48, ¶ 15.

{26}     In *Day*, the Wyoming Supreme Court limited the scope of the public's easement to a "right of flotation" upon the water and such activities "as a necessary incident to" flotation. 362 P.2d at 146, 151. There, a member of the public sought a declaration that he had a right to fish "either from a boat floating upon the river waters, or while wading the waters, or walking within the well-defined channel of" the North Platte River where it crossed privately owned land. *Id.* at 140. The *Day*

15

Court declined to interpret the scope of the public's easement to include walking and wading on the bed of a river for fishing, but held that the public could fish while floating. *Id.* at 146. The *Day* Court reasoned that because the right of flotation had long since been enjoyed by the public through floating logs and timber, it "was but a right of passage" for floating in a craft. *Id.* at 146-47. The right to hunt, fish, and engage in other lawful activities were all modified by the right to float, *id.*, meaning they could be done as long as the person was floating and only with "minor and incidental use of the lands beneath" water. *Id.* This narrow servitude interpretation was rejected in *Conatser*, 2008 UT 48, ¶ 15.

{27}   In *Conatser*, the Utah Supreme Court held that the scope of the public's easement included the right of the public to engage in all recreational activities that utilize the water. *Id.* ¶¶ 11-28.[1] The plaintiffs in *Conatser* sought a declaration that the public's easement allows the public to walk and wade on the beds of public waters. *Id.* ¶¶ 1, 2. The district court held that the public's easement was like that in *Day* and that the public only had a right to be "upon the water." *Id.* ¶ 2 (internal quotation marks omitted). The Utah Supreme Court reversed the district court, reasoning that where *Day* limits the easement's scope, Utah had expanded the scope

---

[1]The Utah legislature subsequently limited the scope of the public's easement. *See* Utah Code Ann. § 73-29-102 (2010).

16

to recreational activities. *Id.* ¶¶ 2, 13-16. "Thus, the rights of hunting, fishing, and participating in any lawful activity are coequal with the right of floating and are not modified or limited by floating, as they are in *Day*." *Id.* ¶ 14. The *Conatser* Court then concluded, "In addition to the enumerated rights of floating, hunting, and fishing, the public may engage in any lawful activity that utilizes the water . . . [and] touching the water's bed is reasonably necessary for the effective enjoyment of those activities." *Id.* ¶ 25.

{28}    *Red River* did not require this Court to address whether the scope of the public's easement includes the touching of privately owned beds beneath public water. 1945-NMSC-034, ¶ 4. Instead the question was whether the public's easement included the right of the public "to participate in fishing and other recreational activities in" public waters. *Id.* Similar to the easement in *Conatser*, this Court held that the public's easement is not limited to flotation or traditional navigability, but is broad and includes the right to "general outside recreation, sports, and fishing." *Id.* ¶¶ 35, 48, 59. We conclude that implicit in our holding is the privilege to do such acts as are reasonably necessary to effect the enjoyment of such enumerated rights. The majority's opinion in *Red River* facilitates such a conclusion for the reasons below.

17

{29} First, *Red River* rejected the common-law rule that the owner of the land beneath water held title to the water as well as possessed an exclusive right to fish in the portion of the waters that flow through the land. *Id.* ¶¶ 13, 36. To prohibit those acts reasonably necessary to enjoy the right to recreation and fishing, such as the touching of beds and banks, effectively reinstates the common-law rule granting landowners the exclusive right of fishery—even if only for waters the Regulations deem nonnavigable. *See* 19.31.22.6 NMAC (1/22/2018) (allowing landowners to receive a certificate recognizing that there are segments of "non-navigable public water" within the landowner's property whose riverbed or streambed or lakebed is closed to public access).

{30} Second, *Red River* rejected the majority holding in *Hartman*, 84 P. 685, because it was contrary to "the better reason and the great weight of authority." *Red River*, 1945-NMSC-034, ¶¶ 38-40. In *Hartman*, the majority concluded that the common-law rule—the owner of a streambed has the exclusive right of fishing in the stream that flows through their land—applied and that there was no "public right of fishery." 84 P. at 687. On the other hand, the dissent, the views with which *Red River* agreed, 1945-NMSC-034, ¶ 38, stated that "a public river is a public highway, and this is its distinguishing characteristic; that the right to common of fishery was vested in the people in all public rivers." *Hartman*, 84 P. at 689 (Bailey, J.,

18

dissenting). The *Hartman* dissent elaborated, "where the land belongs to one party and the water to another, the right of fishery follows the ownership of the water; and where the public has an easement in the water . . . fishing goes with the easement as an incident thereto, for the reason that the waters are public." *Id.* at 690 (Bailey, J., dissenting). In discussing the portion of the Colorado constitution similar to our Article XVI, Section 2, the *Hartman* dissent stated, "if the streams themselves are public, and the water belongs to the people, the people have the right of way in the bed of the stream for all purposes not inconsistent with the constitutional grant." *Hartman*, 84 P. at 692 (Bailey, J., dissenting). *Compare* Colo. Const. art. XVI, § 5 (declaring waters of natural streams as property of the public, "dedicated to the use of the people of the state"), *with* N.M. Const. art. XVI, § 2 (declaring unappropriated water of natural streams as "belong[ing] to the public . . . for beneficial use"). Thus, in favoring the view of the dissent in *Hartman*, we implicitly condoned the public's use of beds under public water as that use is reasonably necessary to effect the enjoyment of the public's easement.

{31}    Finally, both the holding of the majority and the criticism from the dissent in *Red River* suggest that the public's right to use public waters includes such acts as are reasonably necessary to effect enjoyment of the right to recreation and fishing. *Red River* held that "[b]roadly speaking, the rule in this country has been that the

19

right of fishing in all waters, the title to which is in the public, belongs to all the people in common." 1945-NMSC-034, ¶ 48 (internal quotation marks and citation omitted). With this holding, echoing the dissent in *Hartman*, *Red River* again implicitly condones the use of beds beneath public water. Justice Bickley's dissent in *Red River* criticized the majority's holding that the public's easement included use of the beds beneath public water:

> [T]he majority feel that it is appropriate to declare that each individual member of the public has . . . [a] right to fish in the unappropriated waters from every natural stream . . . within the state of New Mexico without the consent of the owners of the lands through which such streams flow and of the banks and beds of such streams because they say that the fact that such waters belong to the public is sufficient answer to the protests of such property owners.

*Id.* ¶ 70 (Bickley, J., dissenting) (fourth alteration in original) (internal quotation marks omitted); *see also id.* ¶ 177 (Sadler, J., dissenting) (criticizing the majority for stating that access to public water must be done without trespass but then establishing a rule that allows trespass onto banks and beds). This criticism of the majority's holding also suggests the dissent's recognition of the implicit right to do such acts as are reasonably necessary for the enjoyment of the public's easement.

{32} Based on the aforementioned, and because we did not limit the scope of the public's easement to floating as in *Day*, we conclude that the public may engage in such acts as are reasonably necessary for the enjoyment of fishing and recreation.

20

Because the Regulations close access to public water based on a finding of nonnavigability, something *Red River*, 1945-NMSC-034, ¶¶ 18, 37, expressly rejected, the Regulations are unconstitutional. To the extent that the Regulations could be interpreted as closing access only to public water where walking and wading is involved, as argued by Intervenors, the Regulations would still be an unconstitutional limitation on the public's right to recreate and fish in public waters.

{33}    We emphasize that the scope of the public's easement includes only such use as is reasonably necessary to the utilization of the water itself and any use of the beds and banks must be of minimal impact. "The real property interests of private landowners are important as are the public's property interest in water. Both are constitutionally protected. These competing interests, when in conflict, must be reconciled to the extent possible." *Galt*, 731 P.2d at 916. That is, the right of the public and the right of the landowner "are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, [so] that there may be a due and reasonable enjoyment of both." *Conatser*, 2008 UT 48, ¶ 20 (internal quotation marks and citation omitted).

{34}    Since we conclude that the Regulations are an unconstitutional limitation on the public's right to recreate and fish in public waters, we must determine whether Section 17-4-6(C), the statute purportedly giving the Commission authority to

21

promulgate the Regulations, can be read to avoid constitutional concerns. If so, we must read it as such and conclude that the Commission lacked statutory authority to promulgate the Regulations.

**D.    Section 17-4-6(C) Can Be Read to Avoid Constitutional Concerns**

{35}    Petitioners argue that Section 17-4-6(C) must be read to avoid constitutional concerns and in doing so, the statute provides no support for the Regulations. Petitioners contend that because the Commission is created and authorized by statute it is limited to the authority expressly granted or necessarily implied by those statutes, and it cannot promulgate regulations that conflict with the only constitutional reading of Section 17-4-6(C). We agree.

{36}    "It is, of course, a well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions." *Lovelace Med. Ctr. v. Mendez*, 1991-NMSC-002, ¶ 12, 111 N.M. 336, 805 P.2d 603; *see also Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 ("[C]ourts will avoid deciding constitutional questions unless required to do so."). Put another way, we should "avoid an interpretation of a . . . statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864 (1989).

{37} Section 17-4-6(C) provides that no person "shall walk or wade onto private property through non-navigable public water or access public water via private property unless the private property owner or lessee or person in control of private lands has expressly consented in writing." Section 17-4-6(C) can be interpreted one of two ways: (1) the public cannot walk or wade onto private property (*excluding* the beds of public water) from public water, and the public cannot gain access to public water by crossing over private property, or (2) the public cannot walk or wade onto private property (*including* the beds of public water) from public water, and the public cannot gain access to public water by crossing over private property. The former raises no constitutional question. *Red River* reiterated several times that trespass onto privately owned lands is not permitted. 1945-NMSC-034, ¶¶ 32, 43, 48, 56. The latter would, like the Regulations, be an unconstitutional limitation on the public's right to recreate and fish in public waters.

{38} Because Section 17-4-6(C) can be construed to avoid a constitutional question and the Regulations conflict with that constitutional reading, we conclude not only that the Regulations are unconstitutional, but also that the Commission lacked the authority to promulgate the Regulations. *See Qwest Corp. v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-042, ¶ 20, 140 N.M. 440, 143 P.3d 478 ("Agencies are

23

created by statute, and limited to the power and authority expressly granted or necessarily implied by those statutes.").

**E.     Because Article XVI, Section 2 Is Declaratory of Prior Existing Law, Our Holding in This Case Is Not a Judicial Taking**

{39}     As a final matter, we address Intervenors' argument that our conclusion—that the public has a right to engage in such acts that utilize public water and are reasonably necessary for the enjoyment of fishing and recreation—amounts to a judicial taking. Intervenors contend that because they can trace title to the riverbeds back to the United States the riverbeds cannot be subject to the public's easement. We are not persuaded.

{40}     As reflected above, Article XVI, Section 2 and the public's easement in public water stem from prior existing law recognized by the United States government. In *Red River*, we began by analyzing whether Article XVI, Section 2's declaration that the waters of New Mexico "belong to the public" applied to the waters above nonnavigable streams. 1945-NMSC-034, ¶¶ 16-19. This Court determined that even though the landowner in *Red River* could trace his title to the land under the nonnavigable water to an early Mexican grant and Article XVI, Section 2 could not deprive the title of any right which may have vested prior to 1911, the constitutional declaration still applied because it was "only declaratory of prior existing law, always the rule and practice under Spanish and Mexican dominion." *Red River*,

24

1945-NMSC-034, ¶ 21 (internal quotation marks and citation omitted). "The doctrine of prior appropriation, based upon the theory that all waters subject to appropriation are *public*," applied "before New Mexico came under American sovereignty and continu[ed] thereafter." *Id.* ¶¶ 22, 26.

{41} Thus, the waters at issue are public waters and always have been. *Id.*; *see also* § 17-4-6(C) (referring to nonnavigable waters as "public water"). Intervenors' argument that the landowners can trace their title to the riverbeds back to the United States is immaterial. Even if Intervenors can trace their title back to the United States—as is the case with nonnavigable waters under the federal navigable-in-fact test—this does not change that the owner of the land must "yield its claim of right to so reserve as against use by the public." *Red River*, 1945-NMSC-034, ¶ 23; *see also id.* ¶ 24 ("[T]he United States government . . . has always recognized the validity of local customs and decisions in respect to the appropriation of public waters."); *id.* ¶ 259 (opinion on second motion for rehearing) ("These waters are publici juris and the state's control of them is plenary; that is, complete; subject no doubt to governmental uses by the United States."). As succinctly stated by the Attorney General,

> Based on *Red River* and subsequent cases construing New Mexico law, it is clear that even if a landowner claims an ownership interest in a stream bed, that ownership is subject to a preexisting servitude (a

25

superior right) held by the public to beneficially use the water flowing in the stream.

N.M. Att'y Gen. Op. 14-04 (April 1, 2014). Thus, any title held by Intervenors was already subject to the public's easement in public waters. *See Red River*, 1945-NMSC-034, ¶ 45 (providing that when the United States confirmed title to the lands in question, it did not "destroy, or in any manner limit, the right of the general public to enjoy the uses of public waters"); *see also Pub. Lands Access Ass'n v. Bd. of Cnty. Comm'rs*, 2014 MT 10, ¶ 70, 373 Mont. 277, 321 P.3d 38 (concluding that under the Montana Constitution and the public trust doctrine, nothing had been taken from the riparian owner because he "never owned a property right that allowed him to exclude the public from using its water resource"); *cf. State v. Wilson*, 2021-NMSC-022, ¶¶ 52-56, 489 P.3d 925 (describing how there is no taking when the owner's title was already barred under existing law from using the land a certain way). Today we merely clarify the scope of that easement by making explicit what was already implicit in *Red River*.

## III.  CONCLUSION

{42}    We conclude that the Regulations are an unconstitutional infringement on the public's right to use public water and that the Commission lacked the legislative authority to promulgate the Regulations. We hold that the public has the right to

26

recreate and fish in public waters and that this right includes the privilege to do such acts as are reasonably necessary to effect the enjoyment of such right.

{43}    **IT IS SO ORDERED.**

_____
                                        **MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**